STEPHEN V. R. HENDRICK *vs.* BOSTON AND ALBANY
RAILROAD COMPANY.

Hampden.    September 29, 1897. — December 16, 1897.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Injury to Cattle during Transportation on Railroad — Duty to unload and feed Cattle — Instructions — Statute — Order of Cattle Commissioners — Law and Fact — Negligence — Due Care — Damages — Evidence.*

The finding of the jury, in an action for injuries to cattle during transportation on a railroad, that no contract in writing between the parties was signed at the time of shipping the cattle renders immaterial all requests for rulings made and rulings given on the assumption of the existence of such a contract.

In an action for injuries to cattle during transportation on a railroad, a request for

an instruction that if a contract for the shipment of the cattle relied on by the defendant to establish its defence was signed by the plaintiff some months after such shipment, and if he signed it at the request of the agent at the place of shipment, he cannot recover, is rightly refused.

The Pub. Sts. c. 207, § 55, in regard to the confinement of animals in railroad cars for longer than a certain period without unloading them for rest, food, and water, are not superseded by orders of the cattle commissioners, providing that animals in transit, or neat cattle brought from without the limits of the Commonwealth, shall not be unloaded therein for any purpose whatsoever, except in case of accident, at any place other than a quarantine station designated, or upon a written permit signed, by the commissioners, and apply to a case where a part of the time of confinement was on railroads outside of the Commonwealth.

It cannot properly be ruled, at the trial of an action for injuries to cattle during transportation on a railroad, that if failure to comply with Pub. Sts. c. 207, § 55, is evidence of negligence, it is evidence of negligence on the part of the plaintiff, as well as on the part of the defendant. Whether the plaintiff, who accompanied the cattle, was in such a relation to the business of carrying the cattle as to be affected by the statute is a question of fact for the jury.

In an action against a railroad corporation for injuries to cattle which were received from a connecting railroad during transportation, it is proper to show the general course of business of the defendant in shipping cattle received from the connecting railroad, as bearing upon the questions whether the defendant was negligent, and whether the plaintiff was in the exercise of due care.

Proof that cattle were in good condition when they were shipped is competent in an action for injuries received by them during transportation, in connection with the other evidence in the case.

In an action for injuries to cattle during transportation on a railroad, evidence of the price paid for them in the place of shipment and of the market value of such cattle in a city near the place of delivery is immaterial; but their value at the latter place is the standard by which the damage is to be measured.

Cattle were shipped on two cars, one of which was detained several hours for repairs at A., the other being forwarded from A. over a connecting road to its destination. In an action against the railroad corporation for injuries to the cattle during transportation, the plaintiff, who remained in A. until the first car was repaired and forwarded, was allowed to testify that the train despatcher at A., of whom he inquired about the missing car, told him that nothing would keep the car back unless it was broken, and that he telephoned and then told him that "there was a broken car." *Held*, that this evidence was competent on the question whether the plaintiff was negligent. *Held, also*, that evidence in regard to the time when the plaintiff signed a contract of shipment relied upon by the defendant to establish its defence, which time was several months after the shipment, and what was said in connection with the signing, was competent.

As bearing on the question whether cattle were shipped on a railroad under a contract in writing containing provisions referring to two different rates, it is proper to prove, in an action for injuries to the cattle during transportation, that the defendant never gave the plaintiff but one rate for freight on cattle from the place of shipment to the place of delivery.

The plaintiff in an action for injuries to cattle during transportation on a railroad may testify, to show his due care, that he did not know that a permit to unload the cattle in this Commonwealth was necessary.

Whether the plaintiff in an action for injuries to cattle during transportation on a railroad had trouble with the defendant about another transaction is immaterial.

CONTRACT, with a count in tort, for injuries to the plaintiff's cattle while being transported on the defendant's cars. The answer set up as a defence, among other things, that the cattle were carried under a written contract, containing a release of the defendant from any claim for damages sustained by its negligence or otherwise.

At the trial in the Superior Court, before *Dewey*, J., it appeared that on May 24, 1895, at about eleven o'clock in the morning, the plaintiff shipped fifty-three cattle and two horses from Richville, New York, to Huntington, in this Commonwealth; that these cattle were carried in two cars over the Rome, Watertown, and Ogdensburg Railroad and the New York Central and Hudson River Railroad, the plaintiff riding in the caboose of the train, and arrived on the next morning in Albany, where they were delivered to the defendant; that one car arrived in Huntington at about half past seven o'clock in the evening of May 25, and the other car, which had been detained for several hours at West Albany for repairs, arrived in Huntington at about ten o'clock in the morning of May 26; that the plaintiff remained at East Albany until the second car arrived and accompanied the train having that car to Huntington, where he unloaded the cattle; and that the cattle had not been fed or watered during the entire journey, and were injured in consequence of this neglect.

The jury found specially that no written contract between the parties was signed at the time of shipping the cattle, and returned a verdict for the plaintiff; and the defendant alleged exceptions to the refusal to give certain instructions requested, to the instructions given, and to the admission and exclusion of certain evidence, the nature of which appears sufficiently in the opinion and in the reporter's notes thereto.

*W. H. Brooks & W. Hamilton*, for the defendant.

*J. B. Carroll & W. H. McClintock*, for the plaintiff.

KNOWLTON, J. The finding of the jury that no contract in writing between the parties was signed at the time of shipping the cattle renders immaterial all the requests for rulings made, and the rulings given on the assumption of the existence of such a contract.

The judge rightly refused to give the instruction that, if the

contract and release which were put in evidence were signed by the plaintiff some months after the shipment of the cattle, and if he signed at the request of Fults, the agent at Richville, he cannot recover. Such a contract, so signed long after the business to which it purports to relate has been completed and the rights of the parties fixed, would not be applicable to the state of facts then existing, and without some new consideration moving from one party to the other would be of no effect.

The only remaining requests and instructions material to be considered relate to the rights of the parties at common law, as modified by the Pub. Sts. c. 207, § 55, and the orders of the cattle commissioners under the St. of 1894, c. 491, and the acts amendatory thereof.* In regard to the orders of the cattle commissioners, the rulings were all in accordance with the requests of the defendant, except the ruling that these orders did not supersede the Pub. Sts. c. 207, § 55. This ruling was plainly correct. This section of the Public Statutes was intended to prevent cruelty in the transportation of animals, as well as dangers to the public health from inducing diseases in animals which are to be used for food. See *Brockway* v. *American Express Co.* 168 Mass. 257. The St. of 1894, c. 491, and the orders of the cattle commissioners, made it important for railroad companies, before receiving cattle to be unloaded in this Commonwealth, to ascertain whether written permits to unload them at the place designated by the consignor had been issued by the cattle commissioners. It was the defendant's duty not to receive cattle for transportation unless they could be unloaded lawfully, at the proper time, in compliance with the Pub. Sts. c. 207, § 55. The court rightly ruled that this section of the Public Statutes was applicable to cases where part of the time of confinement was on railroads outside of the Commonwealth. The statute expressly states that the time of confinement on connecting roads is to be included. It is immaterial whether the connecting road

---

* These orders provided, in substance, that animals in transit, or neat cattle brought from without the limits of the Commonwealth, should not be unloaded therein for any purpose whatsoever, except in case of accident, at any place other than a quarantine station designated, or upon a written permit signed, by the cattle commissioners; and certain places in Brighton, Watertown, and Somerville were designated as such quarantine stations.

is or is not within the Commonwealth. The statute makes punishable only conduct that is within the Commonwealth; but the nature of this conduct may depend on what has previously been done outside of the Commonwealth under such circumstances that in ordinary cases the corporation within the Commonwealth would have knowledge of it, or could easily ascertain it. The statute very properly makes it the duty of a railroad corporation to ascertain, at its peril, whether animals which it receives from connecting roads for transportation can be continuously confined without cruelty until their destination is reached.

The judge could not properly rule as requested that, if failure to comply with this statute is evidence of negligence, it is evidence of negligence on the part of the plaintiff, as well as on the part of the defendant. The statute makes the duty to unload and feed the animals absolute on the part of the railroad company, whether the owner or some other custodian upon whom the duty rests primarily is in charge of them or not. In the present case, whether the plaintiff was in such a relation to the business of carrying the cattle as to be affected by the statute was a question of fact for the jury.

There was evidence which tended to show that the defendant had violated this statute, and there was also evidence which made it a question of fact for the jury whether the defendant did not neglect its duty at common law in regard to the confinement of the cattle without rest, food, or water. See *Brockway* v. *American Express Co.*, *ubi supra*.

The instructions given on other parts of the case were correct and sufficient. We do not deem it necessary to consider in detail any other of the numerous requests for rulings presented by the defendant at the trial.

Most of the exceptions to the admission and exclusion of evidence are covered by the general doctrines above stated. It was proper to show the general course of business of the defendant in shipping cattle received from the New York Central, and Hudson River Railroad as bearing upon the questions whether the defendant was negligent, and whether the plaintiff was in the exercise of due care. Proof that the cattle were in good condition when they were shipped was competent, in connection with the other evidence in the case.

The price that the plaintiff paid for his cows in Richville, New York, was immaterial, as was also the market value of cows in Pittsfield. Their value at Huntington was the standard by which the damage was to be measured.

The answer of the train despatcher at Albany to the plaintiff's inquiry about the missing car was competent as bearing on the question whether the plaintiff was negligent.*

The questions in regard to the time of signing the contract and what was said in connection with the signing were competent for reasons already given.† As bearing on the question whether the cattle were shipped under a contract in writing containing provisions referring to two different rates, it was proper to prove that the defendant never gave the plaintiff but one rate for freight on cattle from Richville to Huntington.

---

* The evidence on this point was as follows:

"*Q.* From whom did you hear about the trouble at West Albany? Mr. Brooks asked you if you heard anything about an accident? *A.* The train despatcher at Greenbush (East Albany).

"*Q.* What did he tell you? (Objected to, and admitted, as bearing on the plaintiff's due care.) *A.* I was told, I made an inquiry about the missing car, and he said nothing would keep it back unless a broken car, and he telephoned; he told me that there was a broken car, the Boston and Albany telegraph despatcher."

† The evidence on this point was as follows:

"*Q.* Now, as to the occasion of this time in March, 1896, will you tell us what the circumstances were attending the signing of this contract, how did you happen to sign this contract, what were the circumstances attending it? (Objected to, and admitted.)

"*Q.* You signed this in March, 1896? (Objected to, and admitted.) Where did you sign this paper? *A.* At the station at Richville; Mr. Fults, the agent, asked me to sign it; he said he neglected to take a paper of me; that was generally done when they shipped stock, and they had sent to him for a copy, and if he couldn't furnish one he would be likely to lose his position, and if I would sign one he would be very glad, as it was a mere matter of form between him and the company; I think I didn't sign that day; I was about to take a passenger train, and when I came back he again approached the subject and I simply signed it.

"*Q.* Whether or not anything was said by you or by the agent to you as to this paper taking effect, or having any effect upon the transaction in reference to shipping these cattle in May, 1895? (Objected to, and admitted.) *A.* There was nothing said.

"*Q.* With reference to this paper, when you signed it, did you read it? *A.* No, sir. (Objected to, and admitted, as bearing upon the question of whether the parties intended the paper to be a contract.)"

To show the plaintiff's due care he might testify that he did not know that a permit to unload the cattle was necessary.

. Whether the plaintiff had trouble with the defendant about another transaction was immaterial.

*Exceptions overruled.*