DEERSKIN TRADING POST, INC. *vs.* SPENCER PRESS, INC.

Essex. February 5, 1986. — July 22, 1986.

Present: LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Contract,* Performance and breach, Construction. *Warranty. Error,* Harmless. *Practice, Civil,* Appeal, Summary judgment, Failure to make objection, Directed verdict. *Interest. Damages,* Interest, Breach of contract, Breach of warranty, Lost profits.

Where, at the trial of a claim for breach of warranty arising out of the defendant's alleged faulty printing of the plaintiff's sales catalogs, there was no testimony that the agreement between the parties did not include the limitation of damages provision contained in the defendant's price quotations which had been introduced in evidence, the plaintiff was not harmed by error, if any, in the judge's withdrawing from the jury the question whether the agreement included this provision and in declining to instruct them on the issue of the plaintiff's lost profits as an element of damages. [121-122]

A limitation of damages clause, contained in a printing concern's quotation of terms for the printing of sales catalogs, was neither ambiguous nor unconscionable, and was effective to limit the printer's liability for alleged faulty printing of the customer's catalogs to a refund of that portion of the amount actually paid for the printing. [123-124]

Failure of the plaintiff in a civil action to move for a directed verdict on the defendant's counterclaim precluded it from challenging on appeal the sufficiency of the evidence to warrant a verdict favorable to the defendant on the counterclaim; the presence of evidence that would have warranted a contrary verdict was of no consequence. [125]

Where, at the trial of a civil action, the defendant made no objection to the failure of the judge to instruct the jury to make a finding as to the date of demand from which interest was to be calculated on the defendant's counterclaim, the defendant had no basis for contending on appeal that interest should run from a date earlier than that on which it had moved for leave to amend its answer to include the counterclaim. [125-126]

A judge's denial of motions for summary judgment and partial summary judgment in a civil action will not be reviewed on appeal after a trial on the merits. [126]

CIVIL ACTION commenced in the Superior Court Department on December 10, 1981.

A motion for partial summary judgment was heard by *John T. Ronan*, J., and the case was tried before *Francis L. Lappin*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Jared Specthrie* of New York (*Zachary Starr*, of New York, & *Stephen Moulton* with him) for the plaintiff.

*M. Frederick Pritzker & Walter R. May, Jr.*, for the defendant.

O'CONNOR, J. The dispute in this case arises out of contracts entered into by Deerskin Trading Post, Inc. (Deerskin), and Spencer Press, Inc. (Spencer), whereby Spencer separately agreed to print Deerskin's fall, 1980, sales catalogs and accompanying order forms. After experiencing difficulties with improperly glued order forms, Deerskin instituted this action alleging breach of contract, breach of warranty, and negligence. Deerskin sought to recover the profits it allegedly lost due to the decline in orders caused by the defective order forms and a refund of the purchase price. Spencer filed a counterclaim against Deerskin for the amount owed by Deerskin under the contracts. The case was tried before a jury in the Superior Court. The jury awarded $175,000 to Deerskin on its claim and $358,000 to Spencer on its counterclaim.[1] Deerskin appealed from both judgments entered on the jury verdicts, and Spencer appealed from the judgment on its counterclaim. We transferred the case here on our motion, and we now affirm.

The background of this case can be stated briefly. In early 1980, Deerskin, a retail company engaged in the sale of leather goods, invited Spencer, a commercial printer, to submit price quotations for the printing of approximately four million sales catalogs and enclosed order forms. Spencer submitted separate quotations for the printing of the catalogs and the order forms, and Deerskin accepted both of Spencer's bids. Spencer printed

---

[1] Because Spencer sought only $310,504.93 in damages on its counterclaim, Spencer offered to have its judgment reduced to that amount. The judge ordered that the judgment on the counterclaim be reduced in accordance with Spencer's offer.

the order forms and catalogs in separate batches and then inserted the order forms in the catalogs during the binding process. It is undisputed that some of the order forms had undetected spots of glue on the edge of the form, causing the form to stick to the opposite page in the catalog. Deerskin alleges that these improperly glued order forms caused a decrease in the number of orders it received from the fall, 1980, catalogs it circulated, resulting in lost profits of more than $900,000.

At trial, neither party introduced formally executed contracts for the printing work at issue. Although there was evidence that Spencer's quotations had been signed by Deerskin, signed quotations were not available at trial. However, photocopies of quotations identified as Spencer's final quotations to Deerskin were introduced in evidence. Those quotations described in detail the terms of Spencer's offer to perform the printing of the catalogs and order forms, and the evidence was that the catalogs and order forms were shipped, and payments were made, that corresponded to those quotations. Included in those quotations were identical limitation of damages provisions, which we have reproduced in full in the margin.[2] At the conclusion of the evidence, the judge refused Deerskin's request to instruct the jury with respect to lost profits. The judge decided that any recovery by Deerskin was limited under the terms of the limitation of damages provision in the quotations to a refund of the amount it had paid Spencer for the printing. The judge instructed the jury that, in the event they found that Spencer had breached its warranty with respect to the order forms, Deerskin's damages were limited to a refund and were

---

[2] "It is agreed that in the event of 1) breach of any warranty or 2) delays in delivery, caused in part by circumstances over which Spencer Press Inc. (hereinafter 'Seller') has no direct control (such as availability of paper and other raw materials) the liability of the Seller shall be limited, at the Sellers option as to a refund of or credit towards the purchase price, and the buyer acknowledges that the Seller shall in no event be responsible for any other damages whether direct, indirect, incidental, special or consequential as a result of any purchase orders resulting from this quotation.

"The quoted prices are based on material costs in effect on this date and will be subject to a proportionate increase or decrease based on the fluctuation in the costs to Spencer Press."

measured by the difference between the value of the goods as they should have been and the value of the goods in the condition received by Deerskin. Under that instruction, the jury found for Deerskin in the amount of $175,000. As to Spencer's counterclaim, the judge instructed the jury that, if they found that Deerskin accepted the catalogs and order forms, Spencer was entitled to be paid the amount due under the contracts. The jury awarded Spencer $358,000 on the counterclaim, and that amount subsequently was reduced to $310,504.93.

On appeal, Deerskin makes a number of arguments with respect to the judge's refusal to instruct the jury on lost profits. Deerskin also challenges the jury verdict for Spencer on the counterclaim. Spencer appeals from the denial of its motion for partial summary judgment with respect to its counterclaim and from the judge's refusal to find that December 1, 1980, was the established date of demand for the purposes of computing prejudgment interest.

1. *Judgment on Deerskin's claim.* Deerskin's principal challenge to the judgment entered on its claim concerns the judge's refusal to instruct the jury on lost profits. Deerskin correctly notes that, under the Massachusetts version of the Uniform Commercial Code, consequential damages are sometimes recoverable for a breach of warranty. G. L. c. 106, § 2-714 (1984 ed.). However, it is also clear that, under that statute, the recovery of consequential damages may be limited by agreement of the parties. G. L. c. 106, § 2-719 (3) (1984 ed.). Thus, questions concerning the applicability and interpretation of the limitation of damages provision contained in the quotations introduced in evidence are crucial in deciding whether the judge correctly refused to instruct the jury on lost profits. Deerskin argues first that, by deciding himself that the limitation of damages provision was included in the parties' agreement, the judge improperly withdrew that question of fact from the jury. Because our review of the evidence leads us to conclude that it is highly improbable that the jury would have resolved that question differently from the judge, Deerskin has failed to demonstrate that it was harmed by any error in this regard. In the absence of such a showing, reversal on that

basis is not appropriate. *Pina* v. *McGill Dev. Corp.*, 388 Mass. 159, 164 (1983). *H.E. Fletcher Co.* v. *Commonwealth*, 350 Mass. 316, 322 (1966). *Bendett* v. *Bendett*, 315 Mass. 59, 65 (1943).

The only witnesses whose testimony related to the limitation of damages provision were John Spenlinhauer, vice president in charge of manufacturing for Spencer, Edmond Nugent, Deerskin's president at the time of the transactions, and Nancy Berman, marketing manager of Deerskin in the fall of 1980.[3] Edmond Nugent identified the quotations introduced in evidence as proposals for the printing of the fall, 1980, catalogs and order forms. Although he did not recognize the quotations as the final proposals, Nugent stated that the limitation of damages provision contained in the exhibits would not have changed between the original proposal and the final proposal. Nugent testified further that similar provisions were included in all the previous contracts between Deerskin and Spencer. Nugent's testimony was consistent with that of Nancy Berman, who testified that the quotations in evidence were proposals for the printing of the fall, 1980, catalogs and order forms, and that those proposals contained a limitation of damages provision. Finally, John Spenlinhauer testified that the quotations introduced in evidence were the final proposals for the printing of the catalogs and the order forms. Spenlinhauer was able to verify his opinion that these quotations were the final proposals by comparing the prices charged on the invoices for the printing work with the prices offered in the quotations. There was no testimony that the agreement of the parties did not include the limitation of damages provision contained in the quotations introduced in evidence. In light of the evidence presented at trial on the subject, it seems highly unlikely that the jury would have concluded, differently from the judge, that the limitation of damages provision was not part of the parties' agreement. Therefore, if it was error for the judge to decide this question himself, a matter we need not decide, such error was harmless.

---

[3] Deerskin brings to our attention that, at the time of trial, Edmond Nugent was employed by Spencer and married to Nancy Berman.

Deerskin argues next that, even if the limitation of damages provision was included in the operative quotations, the judge erroneously concluded that, under the circumstances of this case, that provision limited Deerskin's recovery for breach of warranty to a refund of amounts paid to Spencer. The limitation of damages provision states in pertinent part: "It is agreed that in the event of 1) breach of any warranty or 2) delays in delivery, *caused in part by circumstances over which Spencer . . . has no direct control (such as availability of paper and other raw materials)* the liability of [Spencer] shall be limited to a refund . . ." (emphasis added). According to Deerskin, the underscored clause (no direct control clause) applies to the phrase "breach of any warranty" as well as to "delays in delivery." Because, according to Deerskin, the improperly glued order forms resulted from conditions over which Spencer had direct control, the limitation of damages provision is inapplicable to its breach of warranty claim. At the very least, Deerskin argues, the limitation of damages provision is ambiguous and should have been construed, as a matter of law, against Spencer as the drafter of the provision. Finally, Deerskin argues that, even if the no direct control clause should not have been determined as a matter of law to apply to breaches of warranty, the judge erred by failing to submit the question of the applicability of that clause to the jury. We reject those arguments.

Deerskin's contention that the no direct control clause in the limitation of damages provision relates to the phrase "breach of any warranty" is inconsistent with the general rule of grammatical construction that "a modifying clause is confined to the last antecedent unless there is something in the subject matter or dominant purpose which requires a different interpretation." *Commonwealth* v. *Brown*, 391 Mass. 157, 160 (1984), quoting *Moulton* v. *Brookline Rent Control Bd.*, 385 Mass. 228, 230-231 (1982). There is no language in the limitation of damages provision and nothing in the subject matter or dominant purpose of the limitation of damages provision that requires the conclusion that the no direct control clause was intended to modify the phrase "breach of any warranty." Furthermore, the parenthetical phrase "such as availability of paper

and other raw materials" included in the no direct control clause clearly indicates that the clause was meant to apply only to delays in delivery. The limitation of damages provision, therefore, is not ambiguous.

In addition to the foregoing arguments, Deerskin argues that the use of the term "refund" in the limitation of damages provision is ambiguous because it is unclear whether Deerskin's recovery is limited to the amounts it paid Spencer or whether Deerskin could recover the entire purchase price. The judge correctly concluded that the term "refund" is not ambiguous and that Deerskin's recovery for breach of warranty was restricted under the terms of the limitation of damages provision to a return of that portion of the purchase price already paid to Spencer.

Deerskin makes two final arguments with respect to its claim against Spencer that merit little discussion. First, Deerskin argues that, in so far as the limitation of damages provision limits its damages for breach of warranty to a refund of amounts paid to Spencer, that clause should have been struck by the judge as unconscionable. G. L. c. 106, § 2-719 (3). We disagree. Limiting damages to a refund of the purchase price in the circumstances of this case, where the two parties are sophisticated business entities, and where consequential damages in the event of a problem could be extensive, is a reasonable business practice and one which Deerskin's president at the time of the transactions testified was a part of all previous dealings between the two companies.

Finally, Deerskin argues that, according to the judge's interpretation of the limitation of damages clause, the jury should have been instructed that Deerskin was entitled to a refund of the amount it had paid to Spencer rather than being instructed that they should determine damages based on diminution of value. Deerskin, however, did not object to the judge's failure to give such an instruction at the conclusion of the judge's charge. "When no objection is taken to the failure of a judge to give an instruction, and the attention of the judge is not called to the matter, such failure cannot be raised on appeal." *Karen Constr. Co.* v. *Lizotte,* 396 Mass. 143, 149 (1985).

2. *Judgment on Spencer's counterclaim.* Deerskin argues that the jury verdict for Spencer should be vacated because the jury could not reasonably have concluded that Deerskin accepted the catalogs and order forms. In essence, Deerskin appears to argue both that the evidence was insufficient to warrant the jury's verdict for Spencer and that the weight of the evidence required a verdict favorable to Deerskin. To challenge the sufficiency of the evidence underlying a jury verdict on appeal, a party must have moved for a directed verdict on those grounds at trial. *Martin* v. *Hall,* 369 Mass. 882, 884 (1976). Deerskin failed to move for a directed verdict at the close of Spencer's case on the counterclaim. Thus we refuse to consider Deerskin's challenge to the sufficiency of the evidence to warrant the jury's verdict for Spencer on the counterclaim. Also, we reject Deerskin's contention that the weight of the evidence requires a new trial. Given the sufficiency of the evidence to warrant the verdict favoring Spencer, the fact that there "was some or even much evidence which would have warranted a contrary [verdict]" is of no consequence. *Chase* v. *Roy,* 363 Mass. 402, 407 (1973).

3. *Prejudgment interest.* Judgment was entered on Spencer's counterclaim with prejudgment interest calculated from April 9, 1982, the date Spencer moved to be allowed to amend its answer to include a counterclaim. Subsequent to the entry of that judgment, Spencer filed a motion with the court entitled "Counterclaim Plaintiff's Offer of Remittitur, and Suggestion that Prejudgment Interest Run From December 1, 1980." The judge ordered the judgment reduced in accordance with Spencer's offer, but declined to order interest computed from December 1, 1980. Under G. L. c. 231, § 6C, prejudgment interest is to be calculated from the date of the breach or demand, if established. If the date of breach or demand is not established, prejudgment interest is to be calculated from the date of commencement of the action. Establishing the date of breach or demand is a determination for the trier of fact, and, where trial has proceeded before a jury, neither the judge nor an appellate court can make such a determination. *Karen Constr. Co.* v. *Lizotte, supra* at 149. The jury made no finding

as to the date of demand, and Spencer did not object to the judge's failure to instruct the jury to do so. Therefore, Spencer cannot complain now that the date of demand was not established by the jury, *id.,* and the judge correctly declined to order the calculation of interest from December 1, 1980.

4. *Denial of motion for partial summary judgment.* Prior to trial, Spencer moved for partial summary judgment on its counterclaim, and the motion was denied. On appeal, Spencer argues that partial summary judgment should have been granted with prejudgment interest to run from December 1, 1980. As we recently noted, while Massachusetts has not had occasion to adopt such a rule, a majority of jurisdictions do not allow the denial of motions for summary judgment to be reviewed on appeal after a trial on the merits. *Phelps* v. *MacIntyre,* 397 Mass. 459, 461 n.3 (1986). We think such a rule is sound. Accordingly, we hold that the denial of motions for summary judgment and partial summary judgment will not be reviewed on appeal after a trial on the merits. The purpose of summary judgment is to bring litigation to an early conclusion without the delay and expense of a trial when no material facts are at issue, and it goes without saying that that purpose cannot be served after the case has gone to trial. The merits of a claim are better tested on appeal on the record as it exists after an evidentiary trial than on the record in existence at the time the motion for summary judgment was denied. Accordingly, we decline to review the judge's denial of Spencer's motion for partial summary judgment.

*Judgments affirmed.*