ADELAIDE R. BACON, individually and as executrix,[1] *vs.*
FEDERAL KEMPER LIFE ASSURANCE COMPANY.

Suffolk.    May 6, 1987. — September 14, 1987.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Negligence,* Causing death, Insurance company. *Insurance,* Life insurance:
designation of beneficiary.

At the trial of a civil action brought by the representative of a murder victim's
estate against the insurance company which had carried a policy on the
victim's life, the evidence was insufficient to justify the jury's finding
that the insurance company was negligent, and thus exposed its insured
to an unreasonable risk of harm from criminal conduct, by accepting
and recording a change of beneficiary request, later found to be forged,
which designated the alleged murderer as the principal beneficiary of
the policy, where only an expert was able to detect the forgery. [853-855]
O'CONNOR, J., concurring; ABRAMS, J., dissenting, with whom LIACOS,
J., joins.

CIVIL ACTION commenced in the Superior Court on July 14,
1977.

The case was tried before *William G. Young,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Edward J. Duggan (Edward S. Rooney, Jr.,* with him) for
the defendant.

*Neal C. Tully (Edward I. Masterman* with him) for the
plaintiff.

NOLAN, J. This appeal arises out of a wrongful death action
in which a jury found the defendant, Federal Kemper Life
Assurance Company (Kemper), liable for causing the death of
Edwin C. Bacon. Adelaide R. Bacon was the wife of Edwin

---

[1] Adelaide R. Bacon, on behalf of her two daughters, sued as next-of-kin
for the decedent's wrongful death and as representative of the decedent's
estate for conscious pain and suffering. She also sued individually for her
loss of consortium.

C. Bacon. Kemper is an insurance company which carried a life insurance policy on the life of Bacon. Bacon was found dead in his Boston office on July 30, 1974. In July, 1977, the plaintiff filed a complaint against Kemper alleging both that Kemper's breach of contract and its negligence in accepting and recording a change of beneficiary caused Bacon's murder by his business associate, James Blaikie, Jr. The complaint alleged that Blaikie had forged Bacon's signature on the change of beneficiary form and murdered him in an attempt to collect the proceeds of the life insurance policy.

1. *Prior proceedings.* Kemper filed a motion for summary judgment in which it maintained that the plaintiff's action was barred by the doctrine of collateral estoppel. The motion was denied and a jury trial commenced in January, 1985. At the close of the plaintiff's evidence, Kemper moved for a directed verdict which was denied. The jury awarded the plaintiff $250,000 in damages.[2] Thereafter, pursuant to Mass. R. Civ. P. 50, 365 Mass. 814 (1974), Kemper moved for a judgment notwithstanding the verdict. That motion was also denied. Kemper has appealed the denial of its motions. We took the case on our own initiative. We affirm the denial of Kemper's motion for summary judgment,[3] but we reverse the denial of Kemper's motion for judgment notwithstanding the verdict.[4]

---

[2] Adelaide Bacon as executrix received $50,000 on the claim for wrongful death and $50,000 for the conscious pain and suffering claim. Each daughter was awarded $75,000 for wrongful death.

[3] In *Deerskin Trading Post, Inc.* v. *Spencer Press, Inc.,* 398 Mass. 118, 126 (1986), we adopted the rule that a denial of a motion for summary judgment was not appealable after trial. That rule applies only where the trial is on the merits of the claim which was the basis for the summary judgment motion. *Id.* That is not the case here and thus the rule does not bar review of Kemper's motion.

[4] In its motion for judgment notwithstanding the verdict, Kemper renewed its claim that the plaintiff's action was barred by the doctrine of collateral estoppel. Generally, a party may raise a claim that has been denied in a summary judgment motion in a motion for a judgment notwithstanding the verdict. In this case, however, the facts and legal theories underlying the summary judgment motion were not at issue in the trial, and Mass. R. Civ. P. 50 applies only to claims tried to a jury. See J.W. Smith and H.B. Zobel, Rules Practice § 50.2, at 196 (1977). Thus, the collateral estoppel

2. *Summary of facts.* The life insurance policy, which is central to this case, was issued by Kemper to Edwin C. Bacon on July 1, 1971. The policy carried a face amount of $50,000 and a term of five years. The beneficiary was a trust established by Bacon for his wife and children. In September, 1973, Bacon submitted an application to change the beneficiary of the policy to another but similar trust, known as the Edwin C. Bacon Trust of August 28, 1973. Kemper acknowledged the change of beneficiary by sending Bacon a printed and unsigned form. Bacon was disturbed by Kemper's response. In October, 1973, Bacon's concerns were communicated in a letter to Kemper. Bacon expressed his understanding that Massachusetts law required that the change of beneficiary form be accepted and signed by a company officer. As Bacon put it, this assurance was essential so that both parties knew they were operating from the same facts and because fifty thousand dollars was a considerable sum of money for his family. An officer of Kemper replied (correctly) to Bacon that its legal department's research had not uncovered any such Massachusetts law.

On July 19, 1974, Kemper's home office received another request to change the beneficiary on Bacon's policy. The form, bearing the purported signature of Bacon, requested that the principal beneficiary be designated as James F. Blaikie, Jr., and the Edwin C. Bacon Trust listed as the contingent beneficiary. Bacon's "signature" was witnessed by Blaikie. The application was quickly processed and approved. A letter, dated July 24, 1974, acknowledging the change was sent to Bacon's business address.

Bacon habitually went to his office late in the morning and remained there until very late at night. His wife, in contrast, preferred to arise early in the morning and went to bed before he came home. When she awoke on the morning of July 30, 1974, she realized that her husband had not come home the previous night. She went to his office, arriving there around 7:30 A.M. Mrs. Bacon had to locate the building superintendent

argument was not properly included in the motion for judgment notwithstanding the verdict and we disregard it.

because her husband's office door was locked. Upon opening the door, they discovered Bacon's body lying face down on the floor next to a water cooler. Shortly afterwards, the police and coroner arrived. When Bacon's body was removed from the office, a note was discovered under his chest. The note, printed in block letters, stated: "I can't stand it anymore." An autopsy was performed later that day. The medical examiner determined that the cause of death was sodium cyanide poisoning.

In August, 1974, Kemper received proof of Bacon's death from Blaikie and a request for the proceeds of the policy. A similar claim was made by Bacon's wife in September. Faced with these conflicting claims, Kemper submitted the last change of beneficiary form to a handwriting expert. The expert concluded that Bacon had not signed that form. Consequently, in December, 1974, Kemper instituted an action of interpleader for an adjudication of the rival policy claims. On June 12, 1975, a judge of the Superior Court entered a judgment, pursuant to Mass. R. Civ. P. 58 (a), as amended, 371 Mass. 908 (1977), discharging Kemper "from any and all liability whatsoever on its policy" and enjoining the claimants from making "any further claim or commencing or prosecuting this action or any further action or actions . . . on account of said policy of insurance or anything growing out of the same."[5] Thereafter the judge determined that the proceeds be distributed to the Edwin C. Bacon Trust. Three years later, the plaintiff commenced the present action.

3. *Negligence.* In order to impose liability on Kemper for the death of Edwin Bacon, the plaintiff had the burden of proving by a preponderance of the evidence that (a) Blaikie murdered Bacon; (b) Kemper owed a duty to Bacon; (c) Kemper breached that duty, and (d) Kemper's breach of duty was the proximate cause of Bacon's murder. Kemper contends that it was entitled to the entry of judgment in its favor because the

---

[5] We do not treat the issue of collateral estoppel in favor of Kemper arguably arising out of its interpleader action because it is unnecessary to the opinion in the light of the result.

plaintiff's proof was insufficient as a matter of law with respect to each of these issues.

There was sufficient evidence to warrant a finding that Blaikie murdered Bacon and that Kemper owed a duty of care to Bacon in effectuating a change of beneficiary. However, we conclude that there was no evidence to warrant a finding of a breach of duty by Kemper after reviewing the evidence in the light most favorable to the plaintiff and after giving the plaintiff the benefit of every inference favorable to her. *Ferragamo* v. *Massachusetts Bay Transp. Auth.,* 395 Mass. 581, 591 (1985).

Kemper correctly argues that the evidence was insufficient to justify the jury's finding that its conduct fell below the standard of a reasonably prudent insurance company. Kemper claims that there was no evidence which proved that it knew or should have known that its acceptance and approval of the change of beneficiary request exposed Bacon to an unreasonable risk of harm from criminal conduct by a third party. We agree. The plaintiff contends that Kemper acted unreasonably in approving the beneficiary change because it was not signed by a disinterested witness and because Kemper did not attempt to verify whether Blaikie was actually Bacon's business partner. In addition, the plaintiff claims that the October, 1973, letter Bacon sent to Kemper was further evidence that Kemper should have known that the beneficiary change request was suspicious.

The facts relied on by the plaintiff are simply too innocuous to have aroused Kemper's suspicion that Bacon had not consented to the change of beneficiary. William Jones, a former head of Kemper's policyholder service department, whose deposition was read in evidence by the plaintiff, conceded that it was not unusual for a business partner to be listed as a beneficiary on a policy. Moreover, even though Kemper required a beneficiary to have an insurable interest in an insured's life, and Blaikie would qualify in that respect, there is no such requirement under our law. *Strachan* v. *Prudential Ins. Co.,* 321 Mass. 507, 509 (1947). Thus, it is immaterial who was listed as the beneficiary. Nor can we say that Blaikie's signature

as witness was enough to put Kemper on notice that the request was doubtful. Although Jones testified that he thought the requirement of a disinterested witness had been added as a precaution against fraud or foul play, he did not explain how it could obviate such a possibility. It is conceivable that it could prevent a potential beneficiary from exercising undue influence over an insured, but that obstacle could easily be overcome by a beneficiary forging the witness' signature. An insurance company would have no way of knowing if the witness' signature was forged. At the time the application in this case was received, the disinterested witness requirement was no longer in effect. The woman who assumed Jones' position in April, 1974, testified that she made the decision to eliminate that requirement because the company was receiving too many complaints from agents that it was a hindrance to insureds. Finally, the plaintiff produced no expert testimony that such a requirement was considered good practice in the insurance industry or has any support in law.

The only duty that the law imposes on an insurance company to protect its insured is that the company take reasonable steps to determine whether the insured has consented to the policy or the change of beneficiary. In the cases in which an insurance company has been found liable for harm to its insureds, the company either had actual knowledge that the insured had not consented to the policy, *Life Ins. Co.* v. *Lopez,* 443 So.2d 947, 948 (Fla. 1983), and *Ramey* v. *Carolina Life Ins. Co.,* 244 S.C. 16, 21 (1964), or should have known that the person who procured the policy did not have an insurable interest in the life of the insured. *Liberty Nat'l Life Ins. Co.* v. *Weldon,* 267 Ala. 171, 182 (1957). Here, the Kemper clerk charged with processing change of beneficiary requests compared Bacon's signature on that request with his signature on the original policy application request. Those signatures were identical to the naked eye. Only an expert, after careful examination, was able to conclude that one was a forgery.

4. *Conclusion.* Kemper acted reasonably as a matter of law in approving the request. Therefore, there was no breach of

duty. The judgment for the plaintiff is reversed, and judgment is to be entered in favor of Kemper.

*So ordered.*

O'CONNOR, J. (concurring). I agree with the court that the evidence did not warrant a finding that the defendant was negligent. Therefore, I also agree that the defendant is entitled to judgment in its favor. Nevertheless, I write separately because, in my view, the court's ruling that the defendant insurer owed its insured a "duty of care . . . in effectuating a change of beneficiary," *ante* at 854, that is, a duty to "take reasonable steps to determine whether the insured has consented to . . . the change of beneficiary," *ante* at 855, is unwise, and establishes undesirable precedent. I believe that the court's focus should not be on the question whether there was enough evidence to warrant a finding that this defendant violated that supposed duty, but rather should be on the question whether the court should recognize the existence of such a duty. Stated another way, the appropriate inquiry is whether, in the circumstances of this case, a duty should be imposed on an insurer to exercise reasonable care to determine whether the insured's signature on a request for a change of beneficiary has been forged. A second question, which I do not reach, is, What duty is owed to an insured by an insurer who has actual knowledge of such a forgery?

"Negligence, without qualification and in its ordinary sense, is the failure of a responsible person, either by omission or by action, to exercise that degree of care, vigilance and forethought which, *in the discharge of the duty then resting on him,* the person of ordinary caution and prudence ought to exercise under the particular circumstances" (emphasis added). *Altman* v. *Aronson,* 231 Mass. 588, 591 (1919). Whether a defendant owes a plaintiff a duty to exercise reasonable care for his safety is a question of law. See *Monadnock Display Fireworks, Inc.* v. *Andover,* 388 Mass. 153, 156 (1983). "There can be negligence only where there is a duty to be careful." *Theriault* v. *Pierce,* 307 Mass. 532, 533 (1940).

The plaintiff states in her brief that she "does not now contend and has never contended that Kemper had a duty to protect Bacon from criminal conduct." Rather, her contention is this: "Kemper had a duty not to expose Bacon to the reasonably foreseeable criminal conduct of a third party by its acts or omissions, Restatement (Second) of Torts § 302A [1965]; that is, it had a duty not to put Bacon at hazard, not to create the circumstances in which reasonably foreseeable criminal conduct could operate. See Restatement (Second) of Torts § 302 comment a [1965] ('In general, anyone who does an affirmative act is under a duty to others to exercise the care of a reasonable man to protect them against an unreasonable risk of harm to them arising out of the act'); § 302B comment e ('There are, however, situations in which the actor, as a reasonable man is required to anticipate and guard against the intentional, or even criminal, misconduct of others. In general, these situations arise . . . where the actor's own affirmative act has created or exposed the other to a recognizable high degree of risk of harm through such misconduct, which a reasonable man would take into account')." Thus, the plaintiff quite properly does not appear to contend that the relationship of insurer and insured by itself imposed a duty on the insurer to exercise reasonable care to protect its insured from harm. Rather, the plaintiff appears to argue that that duty, and therefore the duty to determine whether the insured's signature on the request for a change of beneficiary was forged, arose because of an affirmative act by which the insurer exposed its insured to harm, thus implicating the general rule that any one who does an affirmative act is under a duty to others to exercise reasonable care to protect them against harmful intrusions on their legally protected interests. See *Redgrave* v. *Boston Symphony Orchestra, Inc.,* 557 F. Supp. 230, 237 (D. Mass. 1983) ("tort actions protect interests in freedom from harms incident to intrusions upon legally protected interests").

Specifically, the plaintiff calls our attention to the principle that "when a party binds himself by contract to do a work or perform a service, he agrees by implication to use reasonable and appropriate care and skill in doing it," and his failure to

do so may be tortious. For example, in *Abrams v. Factory Mut. Liab. Ins. Co.*, 298 Mass. 141, 143-144 (1937), cited by the plaintiff, a liability insurer was held liable not only for breach of contract, but in tort as well, for failing to exercise reasonable skill and care in performing its contractual obligation to defend its insured. The plaintiff reasons that the insurer in this case was contractually bound "to process and accept a change of beneficiary submitted in conformity with the policy," that therefore it had a contractual duty to do so with reasonable skill and care, that its processing and acceptance of the forged request were not done with reasonable skill and care, and that therefore the defendant both violated its contract and committed a tort.

The plaintiff's argument is not persuasive. The insurer in *Abrams,* by undertaking the defense of its insured as its insurance contract required it to do, engaged in affirmative action, and that action exposed its insured's legally protected interests to the risk of harm. Its action, therefore, gave rise to a duty of reasonable performance, violation of which was tortious. The insurer's action in this case was not required by its contract, however. The relevant portion of the instant policy appears in the margin.[1] Assuming in favor of the plaintiff that the insurer had a contractual obligation to process changes in beneficiaries *submitted by the policy owner* in conformity with the policy, no such submission was made in this case. The insurer's conduct was not required by its contract. Any lack of skill or care on its part was not a contractual violation. Thus, the plaintiff's theory that the insured is liable for negligent failure to perform a contractual obligation does not apply.

---

[1] "How Beneficiary May Be Changed. While this Policy is in force, the Owner may change the Beneficiary, unless otherwise provided by endorsement hereon, by filing at the Home Office of the Company a written request therefor accompanied by this Policy for endorsement. Such change shall be subject to any existing assignment of this Policy and shall take effect only when recorded by the Company at its Home Office. However, upon being recorded by the Company any such change shall take effect as of the date such notice was signed, subject to any payment made or other action taken by the Company before the change was recorded. The Company reserves the right to require the Policy for endorsement of any change of Beneficiary."

The plaintiff also argues that, even if the insurer was not contractually bound to exercise reasonable care to ascertain whether the request for a beneficiary change was truly the policy owner's request, "the duty may simply be imposed as a matter of sound policy, finding its 'source in existing social values and customs.' *Mullins* v. *Pine Manor College,* 389 Mass. 47, 51 (1983)." The plaintiff argues that "the threat to an insured of criminal acts of a third party, who gains an interest in the policy without the insured's knowledge and consent, is self-evident, and the insurer is the party which is in the position to take those steps which are necessary to ensure a policy does not issue, or a designation of beneficiary is not changed, without the knowledge and assent of the insured." The plaintiff's argument appears to be based on the premise that the beneficiary is changed, thus conferring an interest on a third party, by some affirmative action of the insurer. But, no third party gained an interest in the policy or its proceeds as a result of the insurer's "processing" and "accepting" the forged request for a beneficiary change. Only the policy owner has the power to effectuate such a change by substantial compliance with the policy terms. *Chartrand* v. *Chartrand,* 295 Mass. 293, 296 (1936). *Resnek* v. *Mutual Life Ins. Co.,* 286 Mass. 305, 309 (1934). That fact decisively distinguishes this case from other cases, such as *Ramey* v. *Carolina Life Ins. Co.,* 244 S.C. 16 (1964), and *Liberty Nat'l Life Ins. Co.* v. *Weldon,* 267 Ala. 171 (1957). Those cases involve the original issuance of life insurance policies without the consent of the person whose life is insured or to persons without an insurable interest in that life. In such cases, unlike cases involving only a request for a change of beneficiary, it is the insurer's act in issuing the policy that creates the risk of harm to the insured. No case has been cited by either party or the court in which a court has imposed tort liability on an insurer for negligently "processing" and "accepting" a forged request for a change of beneficiary.

I join the court in reversing the judgment for the plaintiff and ordering judgment in favor of Kemper. However, I do so on the ground that, as a matter of law, Kemper did not owe

the insured a duty to exercise reasonable care to determine whether his signature on the request for a change of beneficiary was genuine. It follows that, in my view, prior practices of Kemper and prior correspondence from the insured to Kemper, which bear only on the question whether reasonable care was exercised, are irrelevant.

ABRAMS, J. (dissenting, with whom Liacos, J., joins). The court today departs from its test "whether 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.'" *Poirier* v. *Plymouth,* 374 Mass. 206, 212 (1978), quoting *Raunela* v. *Hertz Corp.,* 361 Mass. 341, 343 (1972). Because the court departs from its test, I dissent.

I agree with the court that the clerk's[1] comparison of signatures is some evidence that Kemper was not negligent in processing the change of beneficiary form. There was, however, other evidence which indicates negligence on the part of the company. William Jones, the former head of the policyholder service department, said that Kemper required a disinterested third party to witness the signature of the insured. Jones also stated that the beneficiary of a policy would not qualify as a disinterested witness.[2] Jones's successor said that she eliminated Kemper's requirement of a disinterested witness, although there was no evidence she had authority to do so.

The jury could have believed the testimony of Jones that a signature of a disinterested witness was required on a change of beneficiary application and that, because there was no sig-

---

[1] I note that there was no evidence that the clerk was trained in handwriting analysis.

[2] The court states that Jones did not explain how the requirement of a disinterested witness could protect against fraud or foul play. *Ante* at 855. This observation misses the mark. The jury could use this evidence that Kemper was not following its own internal policies and procedures in determining the issue of negligence. The jury was not asked to assess the appropriateness or effectiveness of Kemper's internal procedures.

nature of a disinterested witness on the forged application, Kemper had failed to follow its own internal procedures developed to protect against fraud and foul play. The failure of Kemper to follow its company procedures is some evidence of negligence. See *Kushner* v. *Dravo Corp.*, 339 Mass. 273, 277 (1959); *Kelly* v. *Boston & Me. R.R.*, 319 Mass. 603, 613 (1946); *Stevens* v. *Boston Elevated Ry.*, 184 Mass. 476, 478-479 (1904).

Moreover, the evidence indicates that Bacon had submitted an application to change the beneficiary of his life insurance policy in September, 1973. After this change was processed, Bacon wrote a letter expressing concern to the company regarding the change of beneficiary procedure because the amount of the policy was a significant amount of money to his family.[3] Nine months later, Kemper received a second change of beneficiary application bearing the forged signature of Bacon shifting the proceeds of the policy away from his family. Jones stated that, on the basis of this information alone, he might have been suspicious of the requested change of beneficiary and would have inquired further into the matter before processing the request for a change. Although the Kemper clerk had Bacon's entire file before her in processing the change of beneficiary and could see the prior correspondence regarding the change of beneficiary procedures, she did not investigate this change of beneficiary request. If the jury credited Jones's testimony and rejected the clerk's actions in only comparing the signatures, that was evidence that Kemper violated its duty to act with reasonable care with respect to Bacon. The credibility of the witnesses is for the jury and it is inappropriate for this court to substitute its judgment on questions of fact. See *Cullen Enterprises, Inc.* v. *Massachusetts Property Ins. Underwriting Ass'n,* 399 Mass. 886, 897 (1987); *Lupia* v. *Marino,*

---

[3] Bacon's letter to Kemper stated that he thought Massachusetts law required a change of beneficiary form to be accepted in writing by the company and signed by an officer of the company. Bacon stated that this acknowledgement requirement was the only way to assure that both the insured and the company are aware of the change. He stated that he was anxious about this matter because the amount of the policy was "a lot of money to my wife and kids."

353 Mass. 749 (1967). See also *Foley* v. *Polaroid Corp., ante* 82, 104 (1987) (Liacos, J., concurring).

Although I believe a per se rule which imposes a duty on insurance companies to verify all change of beneficiary applications is inappropriate, on the basis of the facts of this case, the jury could reasonably have inferred that Kemper had a duty to investigate more fully this change of beneficiary. The insured took extraordinary steps to inform Kemper of his concerns for his family and, only nine months later, the insured seemed to have had a dramatic change of heart, switching the beneficiary away from his family, and this change was witnessed by the new beneficiary. These facts support the jury's determination that Kemper was negligent in handling this particular change of beneficiary application.

In addition, although not required by law, Kemper required a beneficiary to have an insurable interest in an insured's life. While a partner has an insurable interest in the life of another partner, the evidence showed that Kemper made no attempt to ascertain whether Blaikie was, in fact, a partner of Bacon.[4] The clerk simply accepted the application for change of beneficiary without any further investigation. The jury could have found that this failure of the clerk to verify that the company policy concerning insurable interest was adhered to in this application was evidence of negligence.

Finally, there was evidence that the Kemper's clerks responsible for change of beneficiary applications handled ten to twelve requests a day. The jury could reasonably have inferred that the benefit from scrutinizing those few applications which were witnessed by the new beneficiary outweighed the cost of doing so. Kemper's failure to scrutinize those few applications

---

[4] As the court states, *ante* at 854, "[I]t is immaterial who was listed as the beneficiary." This statement is far too broad. Pursuant to Kemper's own policies, the beneficiary must be one with an insurable interest in the life of the insured. If the beneficiary named on an application is not such a person, it would be further evidence that Kemper is not following its internal policies and procedures, and evidence which the jury could use to determine whether the defendant was negligent. Although this does not aid the plaintiff here, the court's statement is too broad.

would permit a reasonable inference that Kemper failed to exercise due care in the circumstances.

There was evidence which, if believed, provided a factual basis for an inference that Kemper did not take reasonable steps to determine whether Bacon consented to the change of beneficiary. Instead of adhering to well-established principles of review, the court makes the factual determination that Kemper acted with reasonable care. On the evidence admitted, the jury could have found that Kemper acted reasonably or the jury could have found that Kemper failed to follow its own procedures and exercise a reasonable amount of care in processing the change of beneficiary form. The jury could properly have concluded that Kemper was negligent. "[W]e have no authority to take upon ourselves the duties of a tribunal of fact, and to determine what verdicts should have been rendered by the jury." *Electric Welding Co.* v. *Prince,* 200 Mass. 386, 392 (1909).

The court's decision today "trenches on our long-established, consistently applied, and zealously guarded line of demarcation between the respective roles, functions, and responsibilities of the judge and of the jury." *Commonwealth* v. *Dickerson,* 372 Mass. 783, 802 (1977) (Quirico, J., concurring). "Jurors saw the witnesses, and their judgment of the credibility of the witnesses, of the comparable strength of the conflicting evidence, and of the factual validity of the contentions put forth by each side should be immune from attack. It is the jurors who decide questions of fact, and who apply the law to the facts, not judges." *Bonin* v. *Chestnut Hill Towers Realty Corp.,* 392 Mass. 58, 77-78 (1984) (Abrams, J., dissenting). The court's decision deprives the plaintiffs of the right to have the jury decide the facts and usurps the jury's rightful role, thereby "diminishing the extent of citizen participation in the administration of justice and the many benefits which flow from such participation." *Commonwealth* v. *Canon,* 373 Mass. 494, 516 (1977) (Abrams, J., dissenting), cert.denied, 435 U.S. 933 (1978).

The facts support a conclusion that "[m]ore than one decision was possible to honest and reasonable [persons], and, therefore,

the jury was the tribunal to determine which one." *Hicks* v. *H.B. Church Truck Serv. Co.,* 259 Mass. 272, 277 (1927). In sum, the judge correctly denied the motion for directed verdict and the motion for judgment notwithstanding the verdict. I respectfully dissent.