935 F.2d 1019
 PACIFIC REINSURANCE MANAGEMENT CORP.; Mission Insurance
Company, Plaintiffs-Appellees,
v.
OHIO REINSURANCE CORP.; Walton Insurance Ltd.;
Abeille-Paix Reassurances; Hamburg International
Reinsurance Company; Hassneh Insurance Company of Israel
Ltd.; Seguros America S.A., Defendants-Appellants.
 Nos. 88-6242, 88-6560 and 89-55550.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 9, 1991.
Decided June 5, 1991.
 
 Elliott M. Kroll, Kroll & Tract, Los Angeles, Cal., Barry L. Weissman, Knapp, Petersen & Clarke, Universal City, Cal., for defendants-appellants.
 Linda M. Lasley, Buchalter, Nemer, Fields & Younger, Los Angeles, Cal., for plaintiffs-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before ALARCON, NORRIS and WIGGINS, Circuit Judges.
 WIGGINS, Circuit Judge:
 
 
 1
 Ohio Reinsurance Corp., et al. appeals the district court's denial of a partial stay of arbitration, confirmation of the arbitration panel's Interim Final Order (IFO), and the district court's supersedeas bond order pending appeal of the IFO. The Federal Arbitration Act, 9 U.S.C. Sec. 1 et seq., does not confer independent jurisdiction on the federal courts. General Atomic Co. v. United Nuclear Corp., 655 F.2d 968, 969 (9th Cir.1981), cert. denied, 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982). However, diversity jurisdiction exists in this case, 28 U.S.C. Sec. 1332, and the appeal was timely. This court has jurisdiction under 28 U.S.C. Sec. 1292 governing appeals from interlocutory orders. We hold that the denial of partial stay of arbitration is not appealable. We reverse in part and affirm in part the district court's confirmation of the IFO, and the district court's supersedeas bond order.
 
 BACKGROUND
 
 2
 The appellants, Ohio Reinsurance Corp., et al., were members of a reinsurance pool managed by the appellee, Pacific Reinsurance Management Corporation (PRMC). Each of the appellants executed a Management Agreement authorizing PRMC to develop, underwrite, and manage reinsurance business in their behalf. PRMC accepted much of its business in the name of one of the pool members, Mission Insurance Company. Unhappy with that practice and other matters, appellants sued PRMC for fraud and other wrongful conduct, seeking rescission of the Agreements and damages for any money due third parties from the pool. The district court ordered arbitration under the arbitration provisions of the Management Agreements.
 
 
 3
 During the arbitration, the panel retained outside counsel to help it set up an escrow account for damages that might be due PRMC under the Agreements. The appellants petitioned the district court to grant a partial stay of the arbitration to prevent PRMC from asserting what appellants argued were non-arbitrable claims. The appellants also sought a ruling that the retention of outside counsel by the panel was an improper delegation of authority. The district court denied the petition. The appeal from that denial is the first of the three considered in this consolidated appeal. (No. 88-6242).
 
 
 4
 In July, 1988, the arbitration panel issued an Interim Final Order (IFO) setting up an escrow account with the balances apparently due from appellants to PRMC if the Management Agreements prove valid after further investigation. The appeal from the district court's confirmation of the IFO is the second of the three considered in this consolidated appeal. (No. 88-6560).
 
 
 5
 The third appeal is from the order of the district court requiring supersedeas bonds for the full amount of the escrow order ($20,222,000) pending appeal of the IFO. (No. 89-55550).
 
 DISCUSSION
 
 6
 I. THE DISTRICT COURT'S DENIAL OF A PARTIAL STAY
 
 
 7
 The 1988 amendments to the Federal Arbitration Act (FAA) added a new section to the Act, the relevant part of which prohibits an appeal from a district court's denial of a stay of arbitration:
 
 
 8
 ... [A]n appeal may not be taken from an interlocutory order-- ...
 
 
 9
 (4) refusing to enjoin an arbitration that is subject to this title.
 
 
 10
 9 U.S.C. Sec. 15(b)(4). Because this amendment addresses remedies and procedures and does not alter substantive rights, it applies retroactively. Nichols v. Stapleton, 877 F.2d 1401, 1403 (9th Cir.1989). Therefore, this court has no jurisdiction over appeal No. 88-6242.
 
 
 11
 II. THE DISTRICT COURT'S POWER TO REVIEW THE INTERIM FINAL ORDER
 
 
 12
 The appellants argue that the IFO was a non-final award of the kind that is not confirmable under Ninth Circuit caselaw construing the FAA. The FAA allows a district court to vacate an award that is not a "mutual, final, and definite award upon the subject matter submitted...." 9 U.S.C. Sec. 10(d). The Ninth Circuit has said that because of the Congressional policy favoring arbitration when agreed to by the parties, judicial review of non-final arbitration awards "should be indulged, if at all, only in the most extreme cases." Aerojet-General Corp. v. American Arbitration Ass'n, 478 F.2d 248, 251 (9th Cir.1973) (arbitrator's choice of locale reviewed only for bad faith or exceeding authority); see also Millmen Local 550 v. Wells Exterior Trim, 828 F.2d 1373, 1377 (9th Cir.1987) (arbitrators' decision determining liability, but not remedy was not final and not confirmable); Sunshine Mining Co. v. United Steelworkers, 823 F.2d 1289, 1295 (9th Cir.1987) (final award that depended on future psychiatric examination should be remanded, not confirmed).
 
 
 13
 In Millmen and Sunshine, we refused to review awards that decided only part of the substantive issues submitted to arbitration. In contrast, the IFO in this case does not attempt to address, even partially, the substantive issues before the arbitrators--the validity and application of the Management Agreements. Rather, the IFO is in the nature of a preliminary injunction. It is temporary equitable relief that requires the appellants to place $20,222,000 in escrow pending the arbitrators' decision regarding the validity of the Management Agreements. Whether temporary equitable relief that is necessary to prevent a potential final award from being meaningless can be confirmed and enforced in the district courts is an issue of first impression for the Ninth Circuit.
 
 
 14
 Temporary equitable relief in arbitration may be essential to preserve assets or enforce performance which, if not preserved or enforced, may render a final award meaningless.[1] However, if temporary equitable relief is to have any meaning, the relief must be enforceable at the time it is granted, not after an arbitrator's final decision on the merits. See Southern Seas Navigation Ltd. v. Petroleos Mexicanos, 606 F.Supp. 692, 694 (S.D.N.Y.1985). Arbitrators have no power to enforce their decisions. Only courts have that power. Consequently, courts in other circuits that have been faced with arbitrators' temporary equitable awards have not characterized them as non-final awards on the merits which can only be reviewed in extreme cases. Rather, they have characterized them as confirmable, final awards on an issue distinct from the controversy on the merits. Island Creek Coal Sales Co. v. Gainesville, 729 F.2d 1046, 1049 (6th Cir.1984) ("The interim award disposes of one self-contained issue, namely, whether the City is required to perform the contract during the pendency of the arbitration proceedings. Th[is] issue is a separate, discrete, independent, severable issue."); Sperry Int'l Trade, Inc. v. Israel, 689 F.2d 301, 304 n. 3 (2d Cir.1982) (court notes that the district court rejected the argument "that the Award was an interim decision not ripe for confirmation.... [I]t was a final decision as to the severable issues regarding the letter of credit...."); Southern Seas, 606 F.Supp. at 694 (Order reducing the Notice of Claim of Lien was "not 'interim' in the sense of being an 'intermediate' step toward a further end. Rather, it is an end in itself, for its very purpose is to clarify the parties' rights in the 'interim' period pending a final decision on the merits.") To these courts, a temporary equitable award has an element of finality sufficient to be confirmed and enforced under the FAA.
 
 
 15
 The reasoning of these courts is not inconsistent, as might first appear, with the policy favoring arbitration at the expense of the courts when it is chosen by the parties. Given the potential importance of temporary equitable awards in making the arbitration proceedings meaningful, court enforcement of them, when appropriate, is not an "undue intrusion upon the arbitral process," Southern Seas, 606 F.Supp. at 694, but is essential to preserve the integrity of that process. Therefore, we hold that temporary equitable orders calculated to preserve assets or performance needed to make a potential final award meaningful, such as the IFO in this case, are final orders that can be reviewed for confirmation and enforcement by district courts under the FAA.
 
 III. THE INTERIM FINAL ORDER
 
 16
 Granting that the IFO was properly before the district court, a decision to vacate the award could only have been based on the following narrow grounds listed in the FAA:
 
 
 17
 (a) Where the award was procured by corruption, fraud, or undue means.
 
 
 18
 (b) Where there was evident partiality or corruption in the arbitrators, or either of them.
 
 
 19
 (c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
 
 
 20
 (d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
 
 
 21
 9 U.S.C. Sec. 10. The appellants argue that the IFO exceeded the arbitrators' authority, was tainted by the panel's misbehavior, and was in manifest disregard of law and fact.
 
 
 22
 A. Did the arbitration panel exceed its powers?
 
 
 23
 Appellants argue that PRMC's claims for payments due third parties were not contemplated by the Management Agreements and, therefore, are not arbitrable under those agreements. They urge the court to engage in de novo contract interpretation to determine if the arbitrators exceeded their authority under Sec. 10(d) in considering the claims.
 
 
 24
 Once a court has interpreted the agreement to arbitrate and has compelled arbitration, the arbitrators' decisions are subject only to the question whether the arbitrators exceeded their powers. To answer that question, courts must not decide the rightness or wrongness of the arbitrators' contract interpretation, only whether the panel's decision "draws its essence" from the contract. In making that determination, "the district court must accord considerable deference to the arbitrator's judgment" and should not "vacate[ ] the award because it interpreted the agreement differently." New Meiji Market v. United Food & Comm'l Workers Local Union 905, 789 F.2d 1334, 1335, 1336 (9th Cir.1986). In United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), the Supreme Court said:
 
 
 25
 The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract.... [A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.
 
 
 26
 Id. at 38, 108 S.Ct. at 371; see Pullman Power Prods. Corp. v. Local 403, United Ass'n of Journeymen, 856 F.2d 1211, 1212 (9th Cir.1987) (following Misco ).[2]
 
 
 27
 Appellants make several arguments to support their contention that PRMC's claims for loss payments were not arbitrable and, therefore, the IFO securing funds for possible future satisfaction of those claims exceeded the arbitrators' authority. The heart of these arguments is that the Management Agreements cannot possibly confer any right on PRMC, as manager and agent for appellants, to collect payments appellants may owe to third parties. Regardless of the merits of this argument, it involves interpretation of the Management Agreements for which the contrary argument appears at least equally as valid. Article III of the Agreements states:
 
 
 28
 The Manager [PRMC] is empowered to collect balances due from and to pay balances due to its clients and reinsurance brokers including brokerage thereon....
 
 
 29
 [S]hould such monthly account reveal a deficit wherein loss and loss expenses payable, retrocessional costs, brokerage, ceding commissions and Manager's fees exceed premiums written, the Company shall pay such deficit to the Manager promptly upon receipt of said account.
 
 
 30
 The interpretation that PRMC can enforce these provisions by seeking payments due from appellants to the reinsurance pool, even if these payments will ultimately find their way into other hands, does not exceed the power of the arbitration panel.
 
 
 31
 Appellants argue further that because PRMC's claims were not expressly included in the district court's order compelling arbitration, and were not formally raised until after the arbitration hearings were begun, they were not properly before the panel. However, the order compelling arbitration stated simply that appellants "arbitrate their disputes ... according to the terms of the arbitration provisions of their respective Management Agreements with Pacific Re." Also, Article V of the Management Agreements give the arbitrators wide latitude to resolve disputes under the Agreements:
 
 
 32
 [I]f any dispute shall arise between the Manager and the Company with reference to the interpretation of this Agreement or their rights with respect to any transaction involved ... such dispute ... shall be submitted to three arbitrators....
 
 
 33
 The arbitrators shall interpret this Agreement as an honorable engagement and not as merely a legal obligation; they are relieved of all judicial formalities and may abstain from following the strict rules of law, and they shall make their award with a view to effecting the general purpose of this Agreement in a reasonable manner rather than in accordance with a literal interpretation of the language.
 
 
 34
 The arbitration panel's determination that loss payments may be due PRMC under the Agreements and that funds for a possible final award of those payments to PRMC should be set aside in an escrow account (the IFO) does not exceed the mandate given the panel by the order compelling arbitration and by the Management Agreements, even if PRMC had never raised the claims itself as it did in its arbitration brief.
 
 
 35
 B. Is the arbitration panel guilty of misbehavior?
 
 
 36
 Ex parte evidence to an arbitration panel that disadvantages any of the parties in their rights to submit and rebut evidence violates the parties' rights and is grounds for vacation of an arbitration award. See 9 U.S.C. Sec. 10(c); see Totem Marine Tug and Barge, Inc. v. North Am. Towing, Inc., 607 F.2d 649, 653 (5th Cir.1979). Appellants point to communication between PRMC, PRMC's arbitrator, and the umpire, but not appellants' arbitrator, in late fall 1986 concerning balances possibly due PRMC under the Agreements as an instance of an ex parte communication that violated their due process rights.
 
 
 37
 However, the information communicated between the two panel members was common information routinely sent to the appellants in monthly balance statements. As such, it was readily accessible to appellants' arbitrator. Further, even if appellants' arbitrator had no reason to request the information between late fall 1986 and September 1987 because PRMC had not yet submitted a claim for the loss payments, all parties were on official notice in September 1987 that PRMC was claiming balances due. Appellants had ample opportunity, both before the panel formally considered setting up an escrow account four months later in early 1988 and before it finally issued the IFO in July 1988, to dispute the amount of the balances possibly due or to produce figures of their own. Appellants cannot claim that the earlier communication deprived them of notice or any right to dispute the evidence offered in September 1987 and later in 1988.
 
 
 38
 C. Was the IFO in manifest disregard of law and fact?
 
 
 39
 In American Postal Workers Union v. United States Postal Serv., 682 F.2d 1280, 1284-85 (9th Cir.1982), cert. denied, 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983), cited by the appellants, the Ninth Circuit recognized that an arbitration decision in manifest disregard of law and fact will not be upheld. In that case, the arbitrator held, contrary to undisputed evidence of picketing activity, that a government employee had not "participated in a strike" for purposes of the statutory prohibition against employment of persons who have participated in a strike against the government. The court affirmed the district court's vacation of the award for manifestly disregarding law and fact. However, the court reaffirmed that such action is warranted only in egregious cases:
 
 
 40
 Review of arbitration awards is more limited than review of trial court decisions. An arbitrator's award will not be vacated because of erroneous findings of fact or misinterpretations of law.
 
 
 41
 Id. at 1285.
 
 
 42
 Appellants argue that the arbitration panel issued the IFO in manifest disregard of fact. They argue that PRMC's witness, who substantiated the document on which the IFO was based (Ex. 17010), was completely incompetent and that no support for the document was entered into evidence. They point to the "largely uncontradicted" testimony of their expert that accounting errors invalidated Ex. 17010 and that more than half of the balances allegedly due were in categories not covered by the Agreements. They further argue that source documents for Ex. 17010, as required by Fed.Rule of Evid. 1006, were never introduced into evidence.
 
 
 43
 Appellants' arguments display their continued disagreement with PRMC's figures and with the arbitration panel's tentative acceptance of them for purposes of the IFO. Nevertheless, whatever this court may think of the ultimate weight of PRMC's evidence, appellants do not establish manifest disregard of the facts by the panel sufficient to vacate its order. PRMC's witness, Mr. Horner, testified that he was thoroughly familiar with Ex. 17010 and had reviewed PRMC's subsidiary records, as well as the accounting records routinely sent to the appellants, to verify the exhibit. The panel heard conflicting evidence concerning the validity of the numbers reflected in Ex. 17010 from appellants' expert. The panel was not bound by the Federal Rules of Evidence and it was the panel's job to choose whom to believe. The IFO reflects the panel's sense at that point in the hearings that the balances in Ex. 17010 might well be due PRMC and that an escrow account to provide for that eventuality was advisable.
 
 
 44
 We hold that the IFO did not exceed the arbitrators' powers, was not tainted by the alleged misbehavior, and was not issued in manifest disregard of law or fact. Therefore, we affirm the district court's confirmation of the IFO.
 
 IV. JURISDICTION OVER CTR
 
 45
 One of the reinsurance pool members, Compagnie Transcontinentale De Reassurances (CTR), first appeared as a named party on the arbitration panel's IFO. In its motion to confirm the IFO, PRMC argued that CTR had consented to the consolidated arbitration. In their motion to vacate the IFO, the appellants disputed PRMC's contention. In the district court's hearing on the motions, the judge mentioned in passing his reservations about jurisdiction over CTR: "I don't even think this court has authority over CTR, with all due respect." Transcript of Proceedings at 6 (Sept. 19, 1988). However, the point was not discussed further and the judge included CTR in its confirmation order without explanation.
 
 
 46
 Generally, it is true that "one who has not agreed to arbitrate will not be forced to arbitrate." Laborers' Int'l Union v. W.W. Bennett Constr. Co., 686 F.2d 1267, 1274 (7th Cir.1982). CTR agreed to arbitrate its claims with PRMC in its Management Agreement and in a separate agreement on November 27, 1985 during litigation with PRMC in New York state court. However, according to the record, CTR never agreed to a consolidated arbitration with the other appellants and PRMC. In fact, the November 1985 arbitration agreement with PRMC expressly leaves open the question of consolidation. CTR did participate in the respondents' audit of PRMC during discovery in the instant arbitration, but that limited participation, by itself, is not enough to subject CTR to the arbitrators' jurisdiction.
 
 
 47
 PRMC impliedly argues that the arbitration panel had power to include CTR in its arbitration. However, in Hotel and Restaurant Employees and Bartenders Int'l Union v. Michelson's Food Servs., Inc., 545 F.2d 1248, 1253 (9th Cir.1976), this court held that an arbitrator does not have authority to expand the action submitted to him into a class action in favor of all similarly situated employees. Michelson's suggests that arbitrators do not have power to add new parties to arbitration proceedings, at least not without the consent of all the parties. That proposition is consistent with the FAA's emphasis on the power of the courts to determine disputes over arbitrability and to compel arbitration. See 9 U.S.C. Sec. 4; cf. Columbia Broadcasting System v. American Recording and Broadcasting Ass'n, 414 F.2d 1326, 1329 (2d Cir.1969) (when certain conditions are met, a court can compel consolidation of arbitrations).
 
 
 48
 We hold that, on the record, CTR did not consent to this arbitration panel's jurisdiction and the district court order compelling the instant arbitration did not include CTR. Therefore, the arbitration panel did not have jurisdiction over CTR.
 
 V. THE SUPERSEDEAS BOND ORDER
 
 49
 The appeal from the supersedeas bond order is not moot inasmuch as several appellants have complied with the order by posting bonds and PRMC has not enforced the escrow order against those appellants who did not comply. This court reviews supersedeas bond orders for abuse of discretion. Rachel v. Banana Republic, Inc., 831 F.2d 1503, 1505 n. 1 (9th Cir.1987).
 
 
 50
 The appellants correctly characterize the bonds in this case as security for security--security for an escrow account that is, itself, security pending the final judgment. There is nothing improper about the arrangement. The appellants have been spared the necessity of committing the full amount of the funds to the escrow account, pending this court's decision on appeal today. The bond order was appropriate security in return for that stay of execution below.
 
 
 51
 Generally, the "purpose of a supersedeas bond is to secure the appellees from a loss resulting from the stay of execution and a full supersedeas bond should therefore be required." Id. The appellants' argue that they should be allowed to offset any amount PRMC owes them against the bond amounts. The argument is misplaced. The right to offset applies to payments due between PRMC and appellants. The escrow order establishes no payments due to either party and neither does the bond order. Further, the appellants have offered no evidence of economic hardship or other factors that would establish an abuse of discretion by the district court in setting the bonds for the full amount of the escrow order.[3]
 
 
 52
 We hold that the supersedeas bond order was not improper or excessive.
 
 CONCLUSION
 
 53
 The district court's confirmation of the IFO, and the court's supersedeas bond order, are AFFIRMED with regards to all appellants except CTR. The IFO and supersedeas bond order are VACATED with respect to CTR.
 
 
 
 [1]
 Rule 34 of the American Arbitration Association Commercial Arbitration Rules contemplates interim equitable relief in appropriate circumstances:
 The arbitrator may issue such orders for interim relief as may be deemed necessary to safeguard the property that is the subject matter of the arbitration without prejudice to the rights of the parties or to the final determination of the dispute.
 
 
 [2]
 Although both Misco and Pullman involve labor arbitration which is not covered by the FAA, Misco looks to the FAA for guidance, implying that the same principle of deference applies in commercial arbitration. Misco, 484 U.S. at 40, 108 S.Ct. at 372
 
 
 [3]
 Appellant Seguros America argues in its own brief that Mexican law, to which Seguros is subject, prohibits Seguros from posting a bond. Therefore, the bond order must be vacated with respect to it. Seguros raises the point for the first time on appeal. PRMC offers another certified translation of the same law which says that insurance companies are prohibited from granting "endorsements, guarantees or sureties." Laws and Codes of Mexico, Insurance and Surety Bonds, Article 62 at VIII (Porrua Collection, 1987). In other words, Seguros could not guarantee a third party's debt, but Seguros certainly can guarantee its own potential debt, or acquire that guarantee from a third party which the bond order requires it to do. We do not resolve the conflicting interpretations because the argument was not raised in the district court