CHARLES CONSTRUCTION CO., INC. *vs.* JAMES DERDERIAN,
trustee[1]
(and a companion case[2]).

Suffolk. November 6, 1991. - February 24, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ

*Arbitration*, Authority of arbitrator, Interim order.

In arbitration proceedings, a party may seek interim relief from the arbitrator before the proceedings are concluded where the arbitrator is authorized by statute or by the terms of the arbitration agreement to grant such relief [16]; moreover, this court expressed the view that, in the absence of a statute or agreement to the contrary, the arbitrator has inherent authority to order a party to furnish security while the arbitration is continuing in order to preserve the status quo or to make meaningful relief possible [16-18].

The construction industry arbitration rules applicable to claims of breach of contract in a certain arbitration proceeding did not authorize the arbitrator to issue an interim order that a party provide security for the payment of any award that might be entered against it, where there was no "property" that was the subject matter of the arbitration to be "safeguard[ed]" within the scope of the rules. [18-19]

CIVIL ACTIONS commenced in the Superior Court Department on March 6, 1990, and March 23, 1990, respectively.

The cases were consolidated for trial and were heard by *Patrick F. Brady*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Vincent Galvin* for Charles Construction Co., Inc.
*Dennis Ryan* for James Derderian.

---

[1] Of the Parkman Realty Trust.

[2] James Derderian, trustee of Parkman Realty Trust *vs.* Charles Construction Co., Inc.

WILKINS, J. Because the applicable arbitration rules did not authorize them to do so, arbitrators had no authority to enter an interim order directing a party to provide security toward the payment of any award the arbitrators might eventually enter. We, therefore, affirm Superior Court judgments vacating the arbitrators' interim order for security. That award had directed James Derderian, as trustee of Parkman Realty Trust, to furnish a $1,000,000 irrevocable letter of credit, payable on demand, to the American Arbitration Association, as security for the payment of any arbitration award that might be entered against Derderian, as trustee, in the arbitration proceeding.

The issue before us is one of law. There is an extensive procedural history to the proceedings that we need not recite. The course of the arbitration seems atypical because it commenced in September, 1987, and, after seventy-three hearing days, suspended early in 1990. Charles Construction Co., Inc., seeks enforcement of the interim arbitration award in one of the actions before us, and Derderian seeks an order vacating that award in the other. We transferred Charles's appeal to this court on our own motion.

In October, 1984, Derderian, as owner of property in Brookline (owner), and Charles, as construction manager (contractor), entered into an associated general contractors' standard form of agreement pursuant to which a condominium and parking garage were to be constructed. That agreement provided for the arbitration of certain claims, disputes, and other matters arising out of the agreement "in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining."

Disputes did arise, and they were submitted to arbitration. The owner asserted claims for more than $2,800,000, and the contractor for more than $1,170,000. Hearings commenced in September, 1987, and continued intermittently until January, 1990, when the contractor requested the panel to issue an order for interim security. On February 16, 1990, in an interim order, the arbitrators, purporting to act under § 34 of the construction industry arbitration rules, ordered the owner

to provide the security that we have previously described. There is no contractual provision apart from the arbitration rules on which the contractor relies. He points to no statutory authorization for the arbitrators' award of interim relief. The owner contends first that, if Charles is to obtain relief before the arbitration proceeding is concluded, it must come from a court.

We reject the owner's claim that the contractor's only avenue for obtaining interim relief is through a court order independent of the arbitration proceeding. We have indeed upheld the entry of protective court orders even though a dispute between the parties is subject to arbitration. See *Hull Mun. Lighting Plant* v. *Massachusetts Mun. Wholesale Elec. Co.*, 399 Mass. 640, 648-649 (1987) (preliminary injunction upheld requiring contractual payments to continue while dispute is arbitrated pursuant to court order); *Salvucci* v. *Sheehan*, 349 Mass. 659, 663 (1965) (bill to reach and apply fraudulently conveyed property may be maintained before arbitration proceeding is concluded). If, however, there is an express agreement that authorizes an arbitrator to grant interim relief, including any authorization set forth in arbitration rules incorporated by agreement of the parties, there is no reason why an arbitrator may not act under that authority. Indeed, in such an instance, the court might be obliged both to defer to the parties' agreement to submit the matter of interim relief to arbitration and to give any subsequent interim order the same deferential treatment that must be accorded to an arbitrator's final order. Of course, a statute could authorize an arbitrator to grant interim relief. Therefore, if the arbitrators had contractual or statutory authority to issue an interim order, the contractor properly could have sought such an order from them and was not limited to asking for interim relief from a court.

There is little authority on the question whether, absent any controlling statute or agreement of the parties, an arbitrator has implicit authority to order a party to provide security, during the pendency of the arbitration, against the possibility of a decision adverse to that party. Where there is

no contractual or statutory guidance, authorities that have considered the question have not agreed on the answer. In *Konkar Maritime Enter., S.A. v. Compagnie Belge d'Affretement*, 668 F. Supp. 267, 271 (S.D.N.Y. 1987), and in *Compania Chilena de Navegacion Interoceanica, S.A. v. Norton, Lilly & Co.*, 652 F. Supp. 1512, 1517 (S.D.N.Y. 1987), the District Court confirmed an arbitrator's order for predetermination security similar to the order in this case, concluding that an arbitrator's right to grant interim relief was implied in the submission of the main dispute to arbitration.[3] On the other hand, in *Swift Indus., Inc. v. Botany Indus., Inc.*, 466 F.2d 1125, 1134 (3d Cir. 1972), the court held that an arbitrator lacked authority to order a cash surety bond.[4]

We agree in general that, in the absence of an agreement or statute to the contrary, an arbitrator has inherent authority to order a party to provide security while the arbitration is continuing. See *Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1022-1023 (9th Cir. 1991) ("Temporary equitable relief in arbitration may be essential to preserve assets or enforce performance which, if not preserved or enforced, may render a final award meaningless"); *Island Creek Coal Sales Co. v. Gainesville*, 729 F.2d 1046, 1049 (6th Cir. 1984) (nothing in the contract or State law prevents the award of interim injunctive relief); *Sperry Int'l Trade, Inc. v. Government of Israel*, 689 F.2d 301, 306 (2d Cir. 1982) ("Under New York law arbitrators have power to fashion relief that a court might not properly grant"). It is reasonable to assume that parties, in agreeing

---

[3]Neither opinion discussed the terms of the agreement to arbitrate or any applicable arbitration rule.

[4]For another example of the divergence of views on the issue, compare Rodman, Commercial Arbitration § 26.1 (West 1984 & Supp. 1989) ("Generally, with the exception of maritime cases, provisional remedies such as attachments or compulsory bonds are not available in arbitration") with 4 Business Law Monographs 5-6 (M. Bender 1989) ("Once the parties agree to submit their dispute to arbitration, the power of the arbitrator to govern the proceedings before him includes the power to grant provisional remedies").

to arbitration, implicitly intended that the arbitration not be fruitless and that interim orders to preserve the status quo or to make meaningful relief possible would be proper. In such a circumstance, the arbitrator's authority to act would reasonably be implied from the agreement to arbitrate itself.[5]

This general principle has no application in this case because we construe the construction industry arbitration rules of the American Arbitration Association, which the contract incorporates by reference, to restrict the authority of an arbitrator to provide interim relief. To justify the issuance of the interim order, the contractor relies on § 34 of the arbitration rules, the same authority that the arbitrators relied on when issuing their order.

Section 34, as it was in effect when the interim order for security was entered in February, 1990, is entitled "Interim Measures," and states: "The arbitrator may issue such orders for interim relief as may be deemed necessary to safeguard the property that is the subject matter of the arbitration without prejudice to the rights of the parties or to the final determination of the dispute."[6] No property was the subject matter of the arbitration. The arbitration was not a dispute over specific property but rather concerned claims of breach of contract. The fact that the owner would be obliged to satisfy any arbitration award against him from assets of the Parkman Realty Trust does not make those assets "the subject matter of the arbitration." We do not give § 34 such an expansive reading. If the drafters of § 34 for the American Arbitration Association had intended that an arbitrator have authority to issue a preliminary order that a party provide security, the rule would not have been written as it was, re-

---

[5]We need not consider here what the consequence should be of a party's inability to comply with such an order. The order here did not simply provide for a security interest in the owner's assets but rather it called for the owner in effect to produce cash security.

[6]Previously § 34, in effect on January 1, 1986 (and perhaps earlier), was headed "Conservation of Property" instead of "Interim Measures," but it was substantially the same as the rule quoted above. The prior rule did not have the words "for interim relief" after the word "orders." The parties do not argue which rules are applicable, and we need not decide.

ferring only to property that is the subject matter of the arbitration.[7]

There is another arbitration rule to which the contractor points but on which it relies only by a casual assertion. Section 43 of the construction industry arbitration rules, entitled "Scope of Award," permits an arbitrator to "grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties . . . ." That rule cannot authorize interim relief of the sort that the arbitrators awarded in this case. Section 43 does not explicitly refer to interim relief, and, if were to be read to do so, it would render unnecessary § 34, a rule that appears to deal explicitly and comprehensively with the subject of interim measures. Moreover, whatever just and equitable relief is granted must be "within the scope of the agreement of the parties." That language seems to be focused on the arbitrator's final disposition (unless perhaps the parties explicitly agreed to grant the arbitrators the right to grant interim relief).[8]

In each case, the judgment vacating the interim arbitration award is affirmed.

*So ordered.*

---

[7]The conclusion of the court in *Pacific Reinsurance Management Corp.* v. *Ohio Reinsurance Corp.*, 935 F.2d. 1019, 1022-1023 & n.1 (9th Cir. 1991), that the rule identical to § 34 in the AAA commercial arbitration rules "contemplates interim equitable relief in appropriate circumstances" is correct, but that rule does not justify an interim order that a party provide security pending the arbitrator's decision.

[8]The statement in *Island Creek Coal Sales Co.* v. *Gainesville*, 729 F.2d 1046, 1049 (6th Cir. 1984), that § 43 authorizes an arbitrator to order specific performance to preserve the status quo during arbitration may be correct (unless the contract expressly prevents such relief), especially as to the party who commenced the proceeding in order to discover whether he could depart from the status quo. That opinion does not, however, say that § 43 supports an order of the sort entered in the case before us.