## Kingstown Corporation vs. Black Cat Cranberry Corp.

No. 04-P-331.

Plymouth. December 8, 2004. - November 23, 2005.

Present: Perretta, Smith, & Trainor, JJ.

*Contract,* Arbitration, Construction of contract. *Arbitration,* Appeal of order compelling arbitration.

This court held, based on applicable rules of grammatical construction and contract interpretation, that a contract between the plaintiff and defendant required disputes to be resolved through mandatory arbitration while also empowering an arbitrator to grant injunctive or other equitable relief at the request of either party; consequently, a Superior Court judge correctly concluded that arbitration of the contract dispute between the parties was mandatory and dismissed the plaintiff's civil action seeking a declaration of its rights under the agreement, injunctive relief, and money damages. [156-161]

Civil action commenced in the Superior Court Department on July 25, 2003.

A motion to dismiss was heard by *Paul E. Troy,* J.

*Edward C. Cooley* for the plaintiff.

*Philip H. Graeter (Ian Crawford* with him) for the defendant.

Perretta, J. This appeal raises the question whether the contract (agreement) between the Kingstown Corporation (Kingstown) and Black Cat Cranberry Corp. (Black Cat) concerning Kingstown's excavation, purchase, and removal of earth materials from land owned by Black Cat requires disputes to be resolved through mandatory arbitration or provides the party seeking enforcement of the agreement with a right of election between arbitration and litigation. A Superior Court judge concluded that arbitration was mandatory and dismissed Kingstown's complaint, see Mass.R.Civ.P. 12(b)(6), 365 Mass. 754

(1974), seeking a declaration of its rights under the agreement, injunctive relief, and money damages.[1] We affirm the judgment.

1. *The dispute.* Paragraph 3 of the parties' agreement, entered into on January 12, 2000, underlies their dispute. That paragraph provides, in pertinent part:

> "The engineer for [Black Cat] has provided [Kingstown] with an *estimate* that there are approximately 750,000 total cubic yards of material to be removed from the Property, but [Black Cat] neither warrants nor guarantees the precise volume of material or the quality thereof. Subject to and in accordance with the provisions of this Agreement, [Kingstown] shall remove earth material from that portion of the Property depicted on the Site Plans (hereinafter referred to as the 'Excavation Area'), and regrade the Property in accordance with the Site Plans." (Emphasis supplied.)

A site plan was attached to the agreement as exhibit A.

On July 16, 2003, Black Cat notified Kingstown in writing that the removal of earth materials from the area specified in the contract as the excavation area had been exhausted, that their agreement had been completed, and that Kingstown was to discontinue its operations and remove its equipment from the designated area at its earliest convenience. Kingstown responded immediately, taking the position that the parties always had intended that the excavation work was to be done in phases; that it had removed only about 375,000 cubic yards of material, most of which was worthless, during the first phase; that it had recently begun to excavate high-grade material; and that Black Cat's position that the agreement had been completed was a pretext motivated by its desire to negotiate a new contract with Kingstown at a price higher than that called for in the agreement.[2]

Black Cat remained firm in its position that its contract with

---

[1]The demand for money damages was based on allegations of fraud, negligent misrepresentation, violation of G. L. c. 93A, breach of contract, breach of the implied warranty of good faith and fair dealing, and promissory estoppel.

[2]Paragraph 12 of the agreement specified that Kingstown was to pay Black Cat seventy-five cents per cubic yard of material removed from the excavation area.

Kingstown had been completed, barred Kingstown from its property, and notified the police that any Kingstown personnel on its property would be trespassers. The police, in turn, informed Kingstown that any of its personnel attempting to enter the work site on Black Cat's property would be arrested. Four days later, Kingstown brought this action in Superior Court seeking damages and a declaratory judgment, and seeking to enjoin Black Cat from interfering with its excavation and removal of earth materials pending litigation on the complaint. After Kingstown's request for a preliminary injunction was denied, Black Cat filed its motion to dismiss on the stated basis that under paragraph 19 of the agreement, Kingstown was required to submit its dispute to binding arbitration. About three months later, Black Cat sought arbitration pursuant to paragraph 19 on the issue of Kingstown's failure to pay its final invoice.[3]

Paragraph 19 of the parties' agreement provides, in full:

> "Any controversy, dispute or question arising out of or with respect to this Agreement or its interpretation, the performance or non-performance by either party, or of any alleged breach *shall be determined by binding arbitration conducted in Boston, Massachusetts, at the election of the aggrieved party*, in accordance with the then existing rules of the American Arbitration Association, and judgment upon any award, which may include an award of damages, may be entered in the highest state or federal court having jurisdiction. Nothing contained in this Paragraph or elsewhere in this Agreement shall in any way deprive either party of its right to obtain injunctive or other equitable relief." (Emphasis supplied.)

2. *Discussion.* "[T]he general rule of grammatical construction is that 'a modifying clause is confined to the last antecedent unless there is something in the subject matter or dominant purpose which requires a different interpretation.' " *Deerskin Trading Post, Inc.* v. *Spencer Press, Inc.*, 398 Mass. 118, 123 (1986), quoting from *Commonwealth* v. *Brown*, 391 Mass. 157, 160 (1984). Based on this rule, Kingstown argues that the phrase

---

[3]Black Cat states in its brief that it "successfully arbitrated its dispute over the unpaid final invoice."

"at the election of the aggrieved party" modifies the antecedent clause "any alleged breach shall be determined by binding arbitration." Kingstown contends that this rule of construction establishes that paragraph 19 did not mandate that disputes be resolved through arbitration. Rather, it argues that the first sentence of paragraph 19 provided the aggrieved party with the right to elect between arbitration or to seek injunctive or other equitable relief, an argument that assumes the arbitrability of the dispute.[4] It also claims that because the language of paragraph 19 is "similar" to that used in the agreement considered in *Rae F. Gill, P.C.* v. *DiGiovanni*, 34 Mass. App. Ct. 498, 501-503 (1993), we must here reach the same result.

Our analysis begins with the rejection of Kingstown's contention or suggestion that the language of the agreement in *Rae F. Gill, P.C.* v. *DiGiovanni, supra,* is "similar" to paragraph 19 and should control the outcome of this appeal. The very dissimilar language there in issue allowed the party seeking to enforce the terms of the agreement to elect arbitration or litigation.[5]

---

[4]Neither Kingstown nor Black Cat raised in the Superior Court or before us the issue whether paragraph 19 "clearly and unmistakably" provided for arbitration and thereby presented a "gateway" question of arbitrability for judicial determination. See *Howsam* v. *Dean Whitter Reynolds, Inc.*, 537 U.S. 79, 83 (2002), decided prior to the filing of the complaint, the motion to dismiss, and the hearing on that motion. See also *Massachusetts Hy. Dept.* v. *Perini Corp.*, 444 Mass. 366, 376-379 (2005). Further, neither party filed a statement pursuant to Mass.R.A.P. 16(l), as amended, 386 Mass. 1247 (1982), suggesting that *Howsam, supra,* and *Perini, supra,* were pertinent to the appeal. Rather, they have consistently proceeded on the basis that paragraph 19 of the agreement clearly and expressly provided for arbitration of their dispute, the only question being whether arbitration was mandatory or elective.

[5]The agreement in *Rae F. Gill, P.C.* v. *DiGiovanni, supra* at 501, provided in relevant part that the parties:

> "shall have the following remedies available to *them* when *seeking to enforce* the provisions of this Agreement:

> "a. arbitration pursuant to the Commercial Arbitration Rules of the American Arbitration Association by an arbitrator to be mutually agreed upon by the parties, or selected by the parties pursuant to the applicable procedures of the American Arbitration Association; *and*

> "b. all other remedies available to [them] in law or equity."
> (Emphasis supplied.)

In interpreting paragraph 19, we apply the rule of grammatical construction recognized in *Deerskin Trading Post, Inc.* v. *Spencer Press, Inc.,* 398 Mass. at 123, as well as the same rules of interpretation applied to the agreement in issue in *Rae F. Gill, P.C.* v. *DiGiovanni, supra.* Those rules are as follows: "[w]hether a particular agreement calls for arbitration is to be determined by applying general principles of contract law," *Mugnano-Bornstein* v. *Crowell,* 42 Mass. App. Ct. 347, 350 (1997); an agreement is to be "construed so as to give it effect as a rational business instrument and in a manner which will effectuate the intent of the parties," *New York Cent. R.R.* v. *New England Merchs. Natl. Bank,* 344 Mass. 709, 714 (1962); the parties' intent "must be gathered from a fair construction of the contract as a whole and not by special emphasis upon any one part," *Ucello* v. *Cosentino,* 354 Mass. 48, 51 (1968), quoting from *Crimmins & Peirce Co.* v. *Kidder Peabody Acceptance Corp.,* 282 Mass. 367, 375 (1933); the contract should be construed to give reasonable effect to each provision, *J.A. Sullivan Corp.* v. *Commonwealth,* 397 Mass. 789, 795 (1986); and a reading of a contract "which gives a reasonable meaning to all [its] provisions . . . is . . . preferred to one which leaves a part useless or inexplicable," *Worcester Mut. Ins. Co.* v. *Marnell,* 398 Mass. 240, 245 (1986), quoting from *Sherman* v. *Employers' Liab. Assur. Corp.,* 343 Mass. 354, 357 (1961).

Application of the rule of grammatical construction stated in *Deerskin Trading Post, Inc.* v. *Spencer Press, Inc.,* 398 Mass. at 123, does not support Kingstown's reading of the first sentence of paragraph 19. The last antecedent to the modifying clause "at the election of the aggrieved party," is either "shall be determined by binding arbitration" or "conducted in Boston, Massachusetts." The parties make no serious claim that "at the election of the aggrieved party" refers to the site of arbitration. Rather, both parties correctly concentrate on the issue whether the right of election gives the aggrieved party the right to bypass arbitration and, instead, choose to litigate its dispute.

Kingstown's reading of the first sentence of paragraph 19 requires us to ignore the word "shall" as well as the rules of contract interpretation. With the exception of the election clause, the first sentence of paragraph 19 is similar in its essentials to

the sort of standard arbitration clause that we have recognized as an expression of consent to arbitrate future disputes. See *Glenn Acres, Inc.* v. *Cliffwood Corp.*, 353 Mass. 150, 154 (1967) ("any controversy or claim arising out of or relating to this contract, or the breach thereof, *shall* be settled by Arbitration in accordance with the Rules of the American Arbitration Association" read as "binding advance consent to arbitrate at the election of either party any dispute which the parties were unable to settle by reference to the terms of their contract" [emphasis supplied]); *Drywall Sys., Inc.* v. *ZVI Constr. Co.*, 435 Mass. 664, 665 (2002) ("any controversy or claim . . . arising out of or related to this subcontract" held to be "standard" agreement for arbitration).[6] Moreover, to read the first sentence of paragraph 19 as giving an aggrieved party the right to elect between arbitration or litigation would, in our view as well as that of the Superior Court judge, render the second sentence of that paragraph superfluous. See *Worcester Mut. Ins. Co.* v. *Marnell*, 398 Mass. at 245.

As previously recited in part one of this opinion, *supra*, the second sentence of paragraph 19 provides that "[n]othing contained in this Paragraph or elsewhere in this Agreement shall in any way deprive either party of its right to obtain injunctive or other equitable relief." Kingstown reads this second sentence as support for its reading of the first sentence, i.e., that arbitration is elective and provides for alternative remedies. It contends that even if the first sentence of paragraph 19 mandates arbitration, the second sentence entitles it to maintain the action because it seeks equitable relief pursuant to G. L. c. 231A, § 1.

Based upon its brief and oral argument before us, we understand Kingstown's argument to be as follows: because it

---

[6]The standard arbitration clause recommended by the American Arbitration Association, Commercial Arbitration Rules, as set out in 2 Domke, Commercial Arbitration, App. L-1-1 (3d ed. 2005), provides:

> "Any controversy or claim arising out of or relating to this contract, or the breach thereof, *shall* be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof" (emphasis supplied).

sought in count seven of its seven-count complaint a "binding declaration that the Agreement encompassed the earth removal that [Black Cat] now seeks to have performed under a new contract, that the work contemplated under the Agreement has not been completed, the Agreement was not properly terminated and is in full force and effect," its lawsuit against Black Cat was expressly authorized by the second sentence of paragraph 19. Put another way, Kingstown's contention is that because its lawsuit against Black Cat contains a request for injunctive and other relief equitable in nature, it is authorized by the second sentence of paragraph 19. See, e.g., *Sahli* v. *Bull HN Information Sys., Inc.*, 437 Mass. 696, 705 (2002) (the "determination of contractual rights is a proper subject of a declaratory judgment proceeding").

Kingstown's reading of the second sentence of paragraph 19 is contrary to all the previously discussed rules of contract interpretation. First, Kingstown fails to give reasonable effect to paragraph 19 in its entirety. Kingstown's reading of paragraph 19 would allow an aggrieved party to avoid mandated arbitration in every instance simply by an artful framing of a complaint seeking a determination of rights under the contract, a matter squarely within the scope of the arbitration mandated in the first sentence of paragraph 19.

Additionally, Kingstown does not take into account the facts that its complaint also seeks relief that is neither "injunctive [n]or equitable," that is, money damages for various actions sounding in tort and contract, see note 1, *supra*, and that an arbitrator, in the absence of an agreement or statute to the contrary, has the inherent authority to grant interim relief. See *Charles Constr. Co.* v. *Derderian*, 412 Mass. 14, 16-18 (1992).

Moreover, and significantly, Kingstown's reading of the second sentence of paragraph 19 would, as amply demonstrated in the present case, allow for multiple proceedings, that is, Kingstown's complaint in which it claims its contract is still in full force and effect and Black Cat's demand for arbitration of its dispute with Kingstown about an invoice that it claims to be

final.[7] Simultaneous proceedings, arbitration and litigation, obviously could lead to the undesirable result of inconsistent determinations leading to a further dispute between parties to an arbitration agreement.

Upon consideration of all the applicable rules of grammatical construction and contract interpretation, we conclude that paragraph 19 provides an aggrieved party with the right to mandatory arbitration while also empowering an arbitrator to grant injunctive or other equitable relief at the request of either party.[8,9]

*Judgment affirmed.*

---

[7]It appears from the materials in the record appendix before us that when Black Cat sought arbitration on its claim, Kingstown notified the American Arbitration Association that it was reserving its right to assert as counterclaims the matters before us in the event we should decide they were subject to arbitration. Although Black Cat asserts in its brief that it "successfully arbitrated its dispute over the unpaid final invoice," see note 3, *supra*, we do not know the basis of that decision or whether Kingstown's right to assert counterclaims was, in fact, reserved.

[8]Kingstown asks that in the event we conclude that arbitration of its claims is mandatory, we remand the matter to the Superior Court with instructions to amend the judgment of dismissal by adding thereto an order that the dispute be submitted to arbitration. For the reasons set out in note 7, *supra*, we decline to order an amendment of the judgment of dismissal.

[9]Our reading of paragraph 19 makes it unnecessary for us to discuss Kingstown's arguments that a party "has no right or obligation to demand arbitration if there is no contract provision providing for it" or that it was unnecessary for the parties to state expressly that they had an option to "elect" a judicial resolution of its dispute because its right to litigate existed independent of any agreement to arbitrate.