Jean Waxman vs. Lee Waxman & others.[1]

No. 12-P-1021.

Suffolk. March 4, 2013. - September 30, 2013.

Present: Graham, Sikora, & Hanlon, JJ.

*Divorce and Separation,* Death of party, Division of property, Tenancy by the entirety. *Real Property,* Tenancy by the entirety, Sale. *Individual Retirement Account. Conversion. Practice, Civil,* Summary judgment, Attorney's fees, Costs, Frivolous action.

In a civil action filed by the plaintiff wife whose husband died during the pendency of the couple's divorce proceeding, a Superior Court judge properly granted summary judgment on the plaintiff's claim that she, and not the husband's adult children from a previous marriage, was entitled to the entire proceeds from the sale of the couple's condominium unit that they had held as tenants by the entirety, where the wife and husband had not executed a definitive ante mortem agreement that would have overridden the common-law rule concerning the right of survivorship. [320-321]

A Superior Court judge properly granted summary judgment on the plaintiff wife's claim of conversion of an automobile that had been jointly owned by the wife and her husband, brought against one of her husband's adult children who previously had been granted permission to use the vehicle but had refused a valid request by the plaintiff's attorney to return it following the death of her husband, where the title to the vehicle was jointly held and passed solely to the plaintiff when her husband died. [321]

This court concluded that a party's objection to the denial of summary judgment on a particular claim was entitled to review even after a trial on the merits, where the subsequent trial excluded the denied claim from further consideration, and where the trial judge's order for judgment subsumed the motion judge's order. [321-323]

In a civil action brought by the plaintiff wife alleging that, when her husband changed the beneficiary of one of his individual retirement accounts (IRA) from the plaintiff to his adult children from a previous marriage without the plaintiff's permission, he violated the automatic restraining order (order) applicable once a complaint for divorce is filed, a trial court judge did not err in concluding that the husband did not violate the order where, as a matter of law, the change in beneficiary occurred before the complaint was filed, and where, in any event, the plaintiff failed to demonstrate circumstances entitling her to a constructive trust or beneficial reinstate-

---

[1]Richard Waxman, Robin Waxman, Joyce Kaufman, as escrow agent, and Fidelity Investments.

ment [323-325]; moreover, the husband's change of beneficiary did not constitute dissipation of marital assets [325-326].

In a civil action brought by a wife against her deceased husband's adult children from a previous marriage, seeking, inter alia, declaratory and equitable relief concerning ownership of three assets, there was no error in the assessment of costs in favor of the children, who prevailed on the claim of greater complexity and a higher monetary value [326-327]; further, the plaintiff was not entitled to appellate fees and double costs where the children's challenge to the remaining two claims were not frivolous in the unique circumstances of their father's death during the pendency of divorce proceedings [327].

CIVIL ACTION commenced in the Superior Court Department on February 26, 2008.

A motion for summary judgment was heard by *Nancy S. Holtz*, J., and the case was heard by *Thomas E. Connolly*, J.

*Wendy B. Jacobs* for the plaintiff.

*Kevin G. McIntyre* for Lee Waxman & others.

SIKORA, J. This case requires the law to distribute the assets of a husband and wife of a late-life marriage. Robert and Jean Waxman married in their sixties. After eleven years their marriage had deteriorated. They separated and began divorce proceedings in the Probate and Family Court (probate court). During the proceedings Robert died. By law his death caused the abatement of the divorce action and divested the probate court of jurisdiction over the distribution of the couple's assets.

Jean[2] then brought the present action in Superior Court against Robert's three adult children (collectively, children) by a previous marriage for, inter alia, declaratory and equitable relief vesting in her ownership of three assets: (1) proceeds of the couple's sale of their jointly held condominium unit; (2) the value of their jointly owned automobile; and (3) the value of a substantial individual retirement account held by Robert. A motion judge granted summary judgment in favor of Jean on her claims of ownership of the condominium unit proceeds and the value of the automobile, but denied summary judgment on her claim to the individual retirement account. That issue proceeded to a bench trial before a second judge. By detailed findings and rulings, he awarded ownership of the individual retirement ac-

_____

[2] We use first names to eliminate confusion.

count to Robert's children. The children have appealed from the award of the condominium unit proceeds and automobile value to Jean; Jean has cross appealed from the award of the individual retirement account to the children. For the following reasons, we affirm the judgment.

1. *Factual background.* The material facts emerging from the summary judgment papers and from the trial record are largely undisputed. We reserve particular details for later analysis.[3]

Robert and Jean married in December of 1995; Robert was sixty-one and Jean sixty-six. Robert's children, Lee, Richard, and Robin Waxman, are named defendants.[4] During the marriage the couple held title to a condominium unit as tenants by the entirety. They maintained title to their automobile in both names.

a. *Financial arrangements.* During the first year of marriage they opened multiple financial accounts, some joint and some individual. As joint arrangements, they created two bank accounts (one at Citizens Bank and the other at Grove Bank) and two stock brokerage accounts at Fidelity Investments (Fidelity), each with explicit rights of survivorship. They opened an additional Fidelity account as tenants in common.

Also during the first year, they established separate individual accounts. Jean began a traditional individual retirement account (IRA) at Fidelity; a daughter and she opened their own Fidelity joint account. Robert continued an existing individual Fidelity account. Finally, Robert opened an individual IRA account at Fidelity (IRA 768 or account). He funded it himself with a beginning balance of $366,308.34. The IRA 768 account bore Robert's name; he designated Jean as its beneficiary, and he granted her authority to conduct trades in the account. Jean managed IRA 768 through eleven years. It achieved an increase in value of approximately $217,628. Robert continued individu-

---

[3]The parties have furnished us with the Superior Court pleadings, a docketed statement of agreed facts, certain of the 151 trial exhibits, and the judges' memoranda of decision and resulting judgment. They have not included a trial transcript. We regard the subsidiary findings of the trial judge as valid unless clearly erroneous. Mass.R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996). The appellate contentions address the correctness of the determination of liabilities and remedies, and not the underlying findings of fact.

[4]Jean also had three adult daughters, none of whom is party to the present litigation.

ally to make substantial contributions to, and withdrawals from, the account. Through the eleven-year marriage, additional contributions to the account amounted to $523,762: $497,812 from Robert individually (95.04%); $4,000 from Jean (.76%); and $21,950 from their joint accounts (4.2%). From its inception in March of 1996 until late February, 2006, Robert alone retained authority to withdraw funds from IRA 768. In late February, 2006, he authorized Jean to make withdrawals. In December, 2006, she withdrew $40,000 to pay certain bills.

On January 2, 2007, Robert gave Fidelity telephone instructions to remove Jean's trading authorization from all accounts. On the following day Jean telephoned Fidelity to request a distribution of $150,000 from IRA 768. Fidelity notified Robert; he rescinded Jean's distribution request. On January 23, 2007, Fidelity removed Jean as an authorized trader.

b. *Commencement of divorce proceedings; the automatic restraining order.* On January 9, 2007, the couple had a violent argument. Jean charged that Robert had assaulted her; an abuse prevention issued against Robert from a District Court. Robert moved out of the condominium unit.

On January 16, 2007, Robert's counsel submitted a motion to the probate court for leave to file a complaint for divorce without inclusion of a certified copy of the parties' marriage certificate. He had prepared a complaint for divorce on grounds of irretrievable breakdown and dated it as of January 16, 2007. The court received the motion on or about January 16; on January 22, a judge endorsed the motion as "hereby allowed." The court docketed the complaint with a "file date" of January 22, 2007.[5] The face of the complaint bears the same stamp date.

Meanwhile Robert's counsel prepared a "Divorce/Separate Support Summons" to accompany service of the complaint and dated it January 18, 2007. The preprinted portion of the summons recited on its face the terms of an automatic restraining order (ARO) in accordance with the language of Supplemental Probate Court Rule 411 (2000) (rule 411).[6] The order prohibited

---

[5]The record does not tell us the location of the complaint between January 16 and 22. Nor do the briefs. Counsel for Robert believed that the complaint remained incomplete without a certified copy of the marriage certificate.

[6]In relevant part, rule 411(a) states, "This automatic restraining order shall

the parties from, among other actions, "[c]hanging the beneficiary of any . . . retirement plan . . . except with the written consent of the other party or by order of the court." On January 19, 2007, Robert removed Jean as the sole beneficiary of IRA 768, and designated his three children as the primary beneficiaries. Jean accepted service of the summons on January 24, 2007. In June of 2007, Robert withdrew $58,000 from the account.

As part of his financial statement submitted to the probate court, Robert listed IRA 768 as an individual asset. Jean did not list it in her financial statement. Also during the pendency of the divorce proceedings, the couple sold their jointly owned condominium unit and placed the proceeds in escrow for later distribution. They exchanged settlement proposals for the division of the proceeds, but did not achieve an agreement. Robert died on January 13, 2008. The probate court dismissed the divorce action on January 18, 2008.

c. *Superior Court action.* On February 26, 2008, Jean began the underlying action against the children in Superior Court. She sought declarations of her ownership of (1) the escrowed condominium unit sale proceeds; (2) the couple's automobile alleged to have been converted by Robert's son, Lee; and (3) IRA 768. As a specific remedy, she sought the imposition for her benefit of a constructive trust on IRA 768 or, alternatively, an order for equitable substitution of her as sole beneficiary in place of the children.

Jean subsequently moved for summary judgment on all three claims. The motion judge concluded that, at the time of Robert's death, the couple owned the condominium unit sale proceeds as tenants by the entirety and that therefore they passed in toto to Jean by survivorship. The motion judge concluded also that Lee had converted the couple's jointly owned automobile and that Jean was entitled to its return.

As to IRA 768, the motion judge observed that no Mas-

---

be effective with regard to the plaintiff upon the filing of the complaint by the plaintiff or the plaintiff's counsel and with regard to the defendant upon service of the summons and complaint or any other acceptance of service by the defendant. . . . Neither party shall directly or indirectly change the beneficiary of any life insurance policy, pension or retirement plan, or pension or retirement investment account, except with the written consent of the other party or by order of the court."

sachusetts precedent had addressed the question whether the ARO prescribed by rule 411 operated on the transfer of assets by a divorcing party before "the date the complaint was filed." She reasoned that Robert's change of beneficiary on January 19, 2007, had preceded the January 22, 2007, filing date of the complaint so as not literally to violate the ARO, which was deemed "effective . . . upon the filing of the complaint." She reasoned also that the factual materials submitted to her failed to show that on January 19, 2007, Robert had notice of the ARO prohibition. On those grounds the motion judge denied Jean's motion for a judgment invalidating the change of beneficiary as a violation of the ARO and conferring ownership of the account on her.

At the ensuing bench trial, Jean pursued her claim to IRA 768 on alternate theories: (1) that Robert had breached an oral agreement that Jean would be the sole beneficiary of the account on his death (contract); (2) that Jean had reasonably relied to her detriment on such a promise (promissory estoppel); and (3) that Robert had wrongfully dissipated the account as a marital asset. The trial judge rejected the contract and estoppel claims explicitly as unsupported by the evidence, and the claim of common-law dissipation implicitly. He determined that she was not entitled to the equitable remedies of a constructive trust or of her reinstatement as the account beneficiary, and declared that ownership of the account vested in the children.[7]

2. *Analysis.* We address first the summary judgment orders awarding Jean ownership of the condominium unit sale proceeds and of the automobile. The settled standard of review applies. From the same record as the motion judge, the appellate court proceeds de novo to examine the evidence in the light most favorable to the nonmoving party, and asks whether the record establishes the necessary material facts and entitles the moving party to judgment as a matter of law. See *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991); *Miller* v. *Cotter*, 448 Mass. 671, 676 (2007).

---

[7]At trial, the judge determined also Jean's entitlement to certain damages ($7,405 plus prejudgment interest) resulting from the conversion of the automobile by Lee (the decline in value of the car during the period of his possession of it). The children appeal from the summary judgment of liability for conversion, but not from the damages amount in the event of affirmance.

Also we bear in mind that the action on appeal proceeded in the Superior Court under its inherent and statutory general jurisdiction over claims at common law and in equity. See G. L. c. 212, § 4; G. L. c. 214, § 1. Had Robert lived, the divorce proceeding would have progressed in the probate court to a distribution of property under the multiple criteria of G. L. c. 208, § 34. Those two standards might overlap in some applications to the dispute over IRA 768. However, the broader and more flexible considerations of general equity now govern that claim.

a. *Proceeds of the condominium unit sale.* The escrowed proceeds came to $160,088. The "proceeds of the sale of real estate held by the entirety are personal property held by the entirety." *Smith* v. *Tipping,* 349 Mass. 590, 592 (1965). A tenancy by the entirety "continues during the existence of the marital relationship and cannot be changed except by death, divorce, a deed of both parties or a deed of one spouse to the other." *Campagna* v. *Campagna,* 337 Mass. 599, 605 (1958). By law, an accomplished judgment of divorce will convert a tenancy by the entirety to a tenancy in common. See *Bernatavicius* v. *Bernatavicius,* 259 Mass. 486, 490 (1927); *Finn* v. *Finn,* 348 Mass. 443, 446 (1965). However the death of a spouse during proceedings and before the entry of a final and absolute judgment of divorce will leave intact the right of survivorship in jointly held property; the parties must take some action to alter that result. *Pavluvcik* v. *Sullivan,* 22 Mass. App. Ct. 581, 583-584 (1986).

The children argue that the apparent intentions of Robert and Jean at the time of his death to divide the proceeds should convert this ownership from joint to common and require an apportionment to Robert's estate.

However, the cases most receptive to that view demonstrate that a definitive ante mortem agreement will be necessary to override the common-law rule. In *Pavluvcik* v. *Sullivan, supra* at 583-585, the parties had executed a separation agreement providing for the sale of jointly held property and the division of proceeds. The sudden death of the wife and the resulting abatement of the divorce action did not nullify the agreement and permit survivor ownership for the husband. The agreement controlled the division of marital property. See *Finn* v. *Finn,*

348 Mass. at 446 (a divorcing husband and wife by a separation agreement may preserve joint ownership of an asset beyond divorce and thereby avoid the common-law rule converting marital joint ownership to postdivorce tenancy in common).

Here, Robert and Jean were addressing an eventual division of the condominium unit sale proceeds but had not accomplished an agreement for specific apportionment as of the time of his death. That circumstance left the common-law rule of survivorship in force. The motion judge correctly awarded summary judgment in favor of Jean.

b. *Automobile.* The children contend that the motion judge improperly granted summary judgment on Jean's claim of conversion of the couple's automobile. Conversion is the "wrongful exercise of dominion or control over the personal property of another." *Cahaly* v. *Benistar Property Exch. Trust Co.*, 68 Mass. App. Ct. 668, 679 (2007). If a defendant has lawful possession of property, the plaintiff must first demand return of the property before conversion can occur. *Atlantic Fin. Corp.* v. *Galvam*, 311 Mass. 49, 50 (1942).

Here, as a matter of law, Lee converted the car. The title to the automobile belonged to Robert and Jean. When Robert died, Jean became the sole owner of the car. See G. L. c. 90D, § 15A, inserted by St. 1981, c. 640, § 1 ("Upon the death of a married resident owner of a motor vehicle[,] . . . said motor vehicle . . . shall be deemed to have been jointly held property with right of survivorship"). Although Lee originally may have had valid possession of the automobile, Jean's attorney demanded its return after Robert's death. Lee's refusal to return it after a valid demand resulted in the car's conversion. *Atlantic Fin. Corp., supra* at 50. Summary judgment for Jean was proper.

c. *IRA 768.* i. *Procedural issue.* As a rule, a party cannot appeal from the denial of summary judgment on a claim or defense after a trial on the merits of that claim or defense. See *Deerskin Trading Post, Inc.* v. *Spencer Press, Inc.*, 398 Mass. 118, 126 (1986); *Johnson* v. *Massachusetts Bay Transp. Authy.*, 418 Mass. 783, 785 (1994). Here, Jean's notice of appeal refers properly to the judgment. However, her appellate argument trains almost

entirely on the motion judge's denial of a favorable summary judgment on her claim of a violation of the ARO by Robert.[8]

For two reasons, we believe that her objection to the denial of summary judgment is entitled to review. First, a refinement of the general rule is that the earlier denial of summary judgment is eligible for review if the subsequent trial excludes the denied claim or defense from further consideration. See *Bacon* v. *Federal Kemper Life Assur. Co.*, 400 Mass. 850, 851 n.3 (1987). In that circumstance the earlier denial has become effectively a final disposition or order.[9] Here, the record indicates that the trial judge and parties treated the claim of the ARO violation and the related issue of appropriate equitable remedies as resolved and located beyond the scope of triable issues.[10] As a second ground,

---

[8]Jean does not now contest the trial judge's findings and conclusions that she is not entitled to ownership of IRA 768 by reason of an agreement with Robert or as a result of promissory estoppel.

[9]Federal decisions applying the cognate Fed.R.Civ.P. 56 have reached that conclusion and permitted an appeal from the denial of summary judgment on an issue of law if the subsequent trial excluded the issue of law and especially if the denied party sought reconsideration of the issue during, or at the conclusion of, trial (by motion for directed verdict or for judgment notwithstanding the verdict, under Fed.R.Civ.P. 50[a] and [b]). See, e.g., *Ruyle* v. *Continental Oil Co.*, 44 F.3d 836, 841-842 (10th Cir. 1994); *Rekhi* v. *Wildwood Indus., Inc.*, 61 F.3d 1313, 1318 (7th Cir. 1995); *McPherson* v. *Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997); *White Consol. Indus., Inc.* v. *McGill Mfg. Co.*, 165 F.3d 1185, 1189-1190 (8th Cir. 1999); *Pavon* v. *Swift Transp. Co.*, 192 F.3d 902, 906 (9th Cir. 1999). The United States Court of Appeals for the Fourth Circuit has rejected that refinement and refused review of a legal argument suffering summary judgment rejection and followed by a trial on independent grounds. *Varghese* v. *Honeywell Intl., Inc.*, 424 F.3d 411, 420-423 (4th Cir. 2005). Massachusetts courts will typically follow the interpretation of a counterpart rule of civil procedure by the Federal courts. See *Rollins Envtl. Servs., Inc.* v. *Superior Ct.*, 368 Mass. 174, 179-180 (1975); *Strom* v. *American Honda Motor Co.*, 423 Mass. 330, 335 (1996). We interpret the Supreme Judicial Court's reference in *Bacon* v. *Federal Kemper Life Assur. Co.*, 400 Mass. at 851 n.3, to follow the majority view of the United States Courts of Appeals and to permit review of Jean's ARO legal position rejected by the motion judge. Jean renewed her ARO contention by a request for a ruling at the conclusion of the subsequent trial.

[10]We draw this inference from the available record appendix submitted by Jean and a supplemental record appendix provided by the children. While Jean might have furnished more information on this point, see Mass.R.A.P. 8(b)(1), as amended, 430 Mass. 1603 (1999) (burden on the appellant in the first instance to provide a record supporting its appellate position), we rely on the trial judge's specific account of the issues presented to him as claims of contract, estoppel, and dissipation, but not ARO violation and related remedies.

we interpret the trial judge's order for judgment to subsume the motion judge's order; the trial judge's order for judgment declared "that the . . . children are the 100% beneficiaries of [IRA 768]." We therefore treat Jean's ARO claim as eligible for review and address it.

ii. *ARO violation.* The motion judge concluded that Robert had not violated the ARO because it did not take effect until the divorce complaint was filed on January 22, 2007, three days after he substituted his children as IRA 768 beneficiaries. Under rule 411(a), an ARO becomes effective "upon the filing of the complaint." Further, under rule 411(a)(3), "[n]either party shall directly or indirectly change the beneficiary of any . . . retirement investment account." Under Mass.R.Dom.Rel.P. 77(c), "[a]ny paper . . . received, whether stamped or not, shall be deemed to have been filed as of the date of *receipt*" by the register (emphasis supplied). A party accomplishes filing by the physical placement of the paper in the register's custody. Smith & Zobel, Rules Practice § 5.9 (2d ed. 2006).

Jean argues that such a literal application of the rule of filing would enable the initiating divorce party to evade the purpose of the ARO — the preservation in place of the spouses' assets — by anticipatory prefiling transfers. She contends also that we should infer the awareness of the ARO's terms by Robert's attorney before January 19, 2007, and impute that knowledge to Robert as the client or principal of the attorney.

In the unusual and narrow circumstances of this case, we agree with the motion judge that Jean has not established a violation of the ARO by Robert as a matter of law or fact. As a matter of law, the change of beneficiary did *precede* the filing date by three days so as to remove the change from the literal

As discussed next, the motion judge's denial of Jean's request for summary judgment rested on two independent grounds, one a ruling of law and the other a determination of fact. As a matter of law, she concluded that under rule 411(a) a violation of the ARO could not occur before the filing of the complaint. As a matter of fact, she drew the inference (typically required in favor of the party opposing a motion for summary judgment) of Robert's unawareness of the prohibition of the ARO when he changed the beneficiary. As we discuss, *infra*, Jean did not pursue the factual issue of Robert's knowledge at the ensuing trial. Consequently, we view the issue of law as preserved but the issue of fact as unpreserved.

prohibition of rule 411.[11] As an issue of fact, the motion judge left open the question whether Robert or his attorney possessed knowledge of the ARO rendering the change of beneficiary an anticipatory evasion of its purpose. The motion judge properly left the question open. Summary judgment is generally unsuitable for disposition of a material question of state of mind. See *Pederson* v. *Time, Inc.*, 404 Mass. 14, 17 (1989); *Flesner* v. *Technical Communications Corp.*, 410 Mass. 805, 809 (1991). The record does not show that Jean pursued the factual point at trial. The omission of the claim from trial forecloses it as a ground of appeal.

As an independent ground, we resolve the issue on the basis of the requested equitable remedies. Even if we were to view the change of beneficiary by Robert as a violation of the ARO, or if we were to make that assumption without deciding the question, such a violation in the circumstances found by the trial judge would not justify a constructive trust or beneficial reinstatement as equitable remedies in favor of Jean. The function of a constructive trust is the prevention of unjust enrichment as a result of fraudulent conduct or breach of duty. See *Barry* v. *Covich*, 332 Mass. 338, 342 (1955); *Foster* v. *Hurley*, 444 Mass. 157, 167-168 (2005); *Sutton* v. *Valois*, 66 Mass. App. Ct. 258, 266 (2006). See also Restatement (Third) of Restitution and Unjust Enrichment § 55 (2011).

Here, the well-supported trial findings and additional undisputed elements of the record show no fraudulent deprivation or unjust enrichment on the part of Robert. They indicate that he consistently maintained ownership and control of IRA 768 and, therefore, control over its disposition on his death. At the outset of their marriage, Robert and Jean purposefully structured multiple accounts as individual or joint. Through the ensuing eleven years, this account remained individual. Robert supplied

---

[11]Rule 411(a)(3), as adopted by the probate court in 1999 and effective on January 1, 2000, specifically added the prohibition against the change of retirement fund beneficiaries. Its adoption removes our case from the holding of *Gleed* v. *Noon*, 415 Mass. 498, 500 (1993), permitting a spouse to alter the beneficiary of a life insurance policy, pension plan, and individual retirement account, so long as that spouse maintained ownership of the policy and funds in accordance with temporary orders of the court restraining the transfer or disposition of the policy and funds themselves.

the entire opening balance of approximately $366,000, and he continued to furnish more than ninety-five percent of its deposits thereafter. He permitted Jean to trade in the account and received some appreciation of it from her work, but he did not authorize her to withdraw funds except for a brief period late in the marriage. As the marriage declined in late 2006 and early 2007, he withdrew her authority both to trade and to withdraw. In the financial statements filed in probate court, both Robert and Jean treated IRA 768 as a personal asset of Robert. During the divorce action, he did not conceal or dispose of the main body of the account.

In these circumstances, Jean did not prove by a reasonable preponderance of the evidence an interest in the account of which Robert had deprived her by fraud or deception for his own unjust enrichment. The more natural inference, drawn by the trial judge, is that Robert redirected his major personal asset from an estranged wife to his adult children. In the absence of such an interest and of unequitable conduct, the imposition of a constructive trust or a forced substitution of beneficiary would not operate equitably. Instead, that remedy would unfairly render Jean the unintended beneficiary of a defunct marriage and an untimely death.[12]

iii. *Dissipation.* The motion judge correctly found and ruled that Robert's change of beneficiary did not constitute the dissipation of a marital asset entitling Jean to compensation by a general equity claim. Typically, dissipation, as a common-law or equitable concept, arises as a claim within the divorce proceeding in probate court. It consists of conduct in the waning days of a marriage by one spouse intending to deprive the other of a fair share of the marital estate. *Kittredge* v. *Kittredge*, 441 Mass. 28, 36 (2004). Expenditures for personal indulgence and in disregard of marital obligations exemplify the wrong. See, e.g., *Ross* v. *Ross*, 385 Mass. 30, 37-38 (1982) ("husband was at fault in increasing the amount of the debt by not tendering payments and by being responsible for collection expenses," and spent money on another woman); *Johnston* v. *Johnston*, 38

---

[12]From our analysis of Robert's ownership of IRA 768, it follows that his withdrawal of $58,000 from it during the divorce proceeding did not deprive Jean of a recognized interest.

Mass. App. Ct. 531, 534-535 (1995) (husband spent money on other women, took frequent vacations, purchased lavish homes, and encumbered real estate in violation of a court order).

The change of beneficiary here did not approach an act of dissipation. No evidence indicated that Robert attempted to squander, to hide, or to indulge himself with, the funds of IRA 768. He reported its value on the financial statement required by the probate court and maintained the bulk of its balance until his death so that it remained visible and available to that court for potential distribution at the conclusion of the divorce.[13] The evidence does not support Jean's appellate characterization. The motion judge correctly rejected the claim of dissipation. The trial judge adopted the ruling as final.

3. *Trial costs; appellate fees.* a. *Costs.* Jean challenges the assessment of costs against her by the Superior Court clerk.[14] Both G. L. c. 261, § 1, and Mass.R.Civ.P. 54(d), as appearing in 382 Mass. 821 (1980), authorize the "prevailing party" to recover its costs unless the court otherwise directs. Jean maintains that she was the prevailing party, and not the children, because she succeeded on her two claims for ownership of the condominium unit sale proceeds and for recovery of the value of the automobile, while the children succeeded on only the single claim for ownership of IRA 768. "Prevailing party" ordinarily means the party achieving a favorable judgment. See *Hannon* v. *Original Gunite Aquatech Pools, Inc.*, 385 Mass. 813, 828 (1982). See also *Smith* v. *Wenz*, 187 Mass. 421, 425 (1905). In the "judgment on finding of the court," the clerk included the award of costs in the paragraph declaring the children as the owners of IRA 768.

The most complex and valuable claim of the case was the contest for ownership of that account. Jean's success on the claims for ownership of the condominium unit proceeds ($160,088) and for the value of the automobile (about $14,000) approximated

---

[13]No evidence showed Robert's withdrawal of $58,000 of the balance of approximately $373,000 to have been profligate or spiteful. While the limited record does not disclose its purpose, we do know that Robert had become unemployed in 2002 and would need a new residence after the separation of January, 2007. On October 4, 2007, approximately three months before his death, he reported a continuing account balance of $340,800.

[14]Our record does not include the specific order for any liquidated amount.

$174,088, exclusive of interest. The value of the children's winning claim to IRA 768 approximated $340,800, exclusive of interest. The greater complexity, the likely greater requisite effort, and the higher monetary value of that claim establish its result as the more favorable outcome and the children as the prevailing parties entitled to an award of reasonable authorized costs for preparation and conduct of the trial.

b. *Appellate fees.* Jean contends also that the children's cross appeal from the summary judgment entered on the claim to the condominium unit proceeds and value of the automobile were frivolous within the meaning of G. L. c. 211A, § 15, and Mass. R.A.P. 25, as appearing in 376 Mass. 949 (1978), so as to entitle her to an award of appellate fees and double costs. An appeal is frivolous if "there can be no reasonable expectation of a reversal." *Avery* v. *Steele,* 414 Mass. 450, 455 (1993). Its determination rests in the sound discretion of the reviewing court. *Ibid.*

"Unpersuasive arguments do not necessarily render an appeal frivolous." *Ibid.* See *Shahzade* v. *C.J. Mabardy, Inc.,* 411 Mass. 788, 797 n.8 (1992). In this instance, the unusual circumstance of Robert's death during negotiation over the apportionment of the condominium unit proceeds entitled the children to pursue an exception from the black letter rule of survivorship. The appeal from the finding of conversion of the automobile was weak but still marginally arguable on factual grounds. An award of appellate fees and double costs is not warranted.

*Judgment affirmed.*